DANIEL TILLOTSON, appellant,

*v.*

MARY ANN GESNER, respondent.

1. Where there is a conveyance of land, voluntary on its face, made by a defendant in a suit just before a judgment for a large sum is rendered against him, which would be a lien on the land if such conveyance had not been made, and the evidence fails to show, by strong proof, that it was made in good faith and for a valuable consideration, the specific performance of an agreement with the vendee for the purchase of the land will not be enforced.

2. If the title to land be doubtful, equity will not compel the defendant, in a bill for specific performance, to expose himself to the hazard of litigation.

3. The bill may be dismissed at the hearing, without reference, if, on the pleadings and proofs, the court can then decide the question.

---

On appeal from the following opinion of the chancellor:

This is a bill for specific performance. By agreement in writing, made August 31st, 1876, the complainant and the defendant, Daniel Tillotson, sen., agreed to exchange land. By it the former agreed to convey to the latter land in Rockland county, New York, described in the agreement as follows: "All the pieces or parcels of land and premises, at Tappan, described in

the deed of Isaac H. Bartow and wife, of April 5th, 1871, and now the property of said Gesner," for the sum of $6,000, subject to a mortgage of $4,000, and the defendant, Daniel Tillotson, sen., agreed to convey to the complainant land in Englewood, in Bergen county, in this state, described in the agreement as follows: " Those certain lots and premises described in two deeds; the one of Cornelius H. Banta and wife to the said Tillotson, dated May 1st, 1869, and the other dated March 23d, 1867, given to Henry Frank and Daniel Frank, and now owned by the said Tillotson." In the agreement, the valuation of $10,000 was put on the complainant's land, and the valuation of $8,250 on Tillotson's property. It was agreed that on the exchanging of the deeds of conveyance, which was to take place on or before the 1st of October then next, Tillotson should pay (lend) to the complainant $500 in cash, and that the complainant should give to him a mortgage on the land to be conveyed by him to her for $2,750, being the amount of the difference ($2,250) in the valuations of the properties, and $500 to be lent. They further agreed that in case of the failure of either of them in any one or all of the specifications contained in the agreement, the party failing should forfeit and pay to the other $500 and brokerage commissions as agreed upon between them. In pursuance of the agreement, the parties respectively took possession of the property to be conveyed to him or her. Tillotson took possession of the Tappan property, moving in with his furniture on or about September 20th, 1876, and the complainant, by Tillotson's permission, took possession of the Englewood property two days afterward. She built a small barn upon it, and otherwise improved it by digging a well, constructing drains &c. &c. Tillotson's son Daniel continued in actual possession of one of the houses on the latter property, but only as tenant of the complainant, under an agreement by which he was to remain until the following spring, at a stipulated rent. On the 2d of October, 1876 (the 1st was Sunday), the complainant, by her agent and her counsel, tendered herself ready to deliver to Tillotson a deed for the property to be conveyed to him, and a mortgage for the $2,750, with a receipt from the mortgagee in the $4,000 mortgage for all in-

terest thereon to that time. Tillotson's attorney saying that he was not then prepared to close the matter, asked for an extension of time till the 12th of that month, which was granted, and a memorandum to that effect endorsed on the agreement and signed by him and the complainant's agent. On the 12th, the representatives of the parties met at the place agreed upon, and the before-mentioned deed and mortgage and receipt were delivered to Tillotson's attorney, who, according to the testimony of the complainant's agent, examined them and then returned them to the complainant's agent (who was present), with the remark that the papers were all right, but that he was not prepared to close the matter up, and that he thought that Tillotson intended to pay the forfeit. The complainant's counsel says that on that occasion they formally handed to Tillotson's attorney the deed and bond and mortgage and receipt for interest, at the same time announcing the complainant's readiness to perform the contract, and demanded of Tillotson's attorney a performance on the part of Tillotson; that the attorney took the papers, examined them, and pronounced them correct, and said he had Tillotson's deed to the complainant with him, but had not the $500 cash. He says that they waited a considerable time for Tillotson, but he did not come, and the attorney said he could not perform the contract without him.

It appears from the testimony that in the early part of November following, Tillotson's attorney said to the complainant's agent that he had a deed for Tillotson's property properly executed in his pocket, and that he would give it to the agent if the latter would give him the bond and mortgage stipulated for in the agreement for $2,250, waiving the loan of $500, and added that if the agent would agree to that, he would call at the latter's house the next day and exchange the papers. To this the agent replied that he had promised to pay the $500 to the mortgagee of the $4,000 mortgage, and did not intend to break his promise; and the attorney then said to him that he "had better think the matter over and let him know—that he did not see what difference the $500 made to him, as he got none of the money;" to which the agent rejoined that it made a good deal of difference

to him as a point of honor.   The agent testifies that in that or
another conversation the attorney stated that Tillotson was willing
to assume the payment of the principal and the accrued interest
(instead of making the loan of $500) on the $4,000 mortgage,
which offer he refused.   According to the testimony of Tillotson's
attorney, the only objection which was made to completing the
transaction was the existence of a judgment.   That judgment,
however, did not appear to be, and was not, a lien on the com-
plainant's property.   He says he met the complainant's agent
frequently afterwards, and made several propositions to him, by
authority of Tillotson, all of which were rejected on the spot.
They are important as showing that there was no objection made
to the complainant's title.   One of them was as follows: Til-
lotson to convey his property to the complainant and take a
mortgage for $2,750, and when the judgment should have been
removed, to lend the $500 and take the conveyance for the com-
plainant's property, and another was to carry out the agreement
according to its provisions (without asking for the removal of the
judgment), except that, instead of lending the $500, which would
at once go to the mortgagee of the $4,000 mortgage, to leave
that amount of interest unpaid on that mortgage—Tillotson to
pay it when convenient to him.   Tillotson's attorney says: "We
repeatedly offered to pay the $500 forfeit, and to pay the broker's
commissions [which Tillotson did, in fact, pay], as expressed in
the agreement, to end the contract and get back possession
of Tillotson's property without a suit."   There were what he
calls some "ancient defects" (an old mortgage &c.), in the com-
plainant's title, but he says he never made any complaint or
objection with regard to them, and they appear to have been
remedied.   He says that at the meeting of the 12th of October,
his chief objection was the judgment, although he adverts to
another objection, to which he says he perhaps alluded at the
time.   This appears to be an objection based on the fact that the
description of the complainant's land seems to differ from the
actual location; but the location has existed for over thirty years,
and the property has been occupied by the complainant and those
under whom she claims title, according to it, for that period.

Tillotson v. Gesner.

This objection, if made, seems to have been merely suggested, and not to have been urged or insisted upon. Nor does the evidence show that there was any deceit on the part of the complainant. As before stated, Tillotson repeatedly offered to pay the amount of the forfeit mentioned in the agreement and the brokerage. It does not appear that he ever made any complaint that he had been overreached in the bargain. He says that his property had been for sale in the hands of the agent, Jackson, by whom the exchange was negotiated, for two years before the bargain was made with the complainant, and that that was the way it happened that Jackson broached the subject of the exchange to him; that Jackson spoke to him about the exchange two or three weeks before it took place, and spoke to him or sent him word several times before he went to see the property; that when he went to see the property, he went alone; that he spoke to no one there except the complainant (he is mistaken as to the person—it was Ida E. Gesner), and she invited him in to lunch, which invitation he accepted, but he can remember nothing that was said by her on the occasion in regard to the property, except that she gave a reason for its neglected appearance. He on that occasion examined the property, and says he was dissatisfied with its general condition and situation—that he found it in a bad condition. Immediately after that visit, there were negotiations between him and Jackson and the complainant's agent in regard to the exchange. The complainant's agent offered $2,000 to boot, and Tillotson refused to exchange on those terms. Jackson brought the parties together again, and told Tillotson that the complainant would give $2,250 to boot. Tillotson still declined. He afterwards went to see the complainant's property again, and subsequently informed Jackson that he would make the exchange, and lend the $500 as part of the consideration. All he did was done with deliberation, and there is no evidence whatever of any misrepresentation. It is urged on his behalf, indeed, that the complainant's property was put into the exchange at $10,000, while it appears to be worth no more than $4,000; but his own property was put in at $8,250, and there is no evidence whatever as to its value. He

swears that the complainant's agent told him that the complainant's property was worth $10,000 or $12,000; but the agent denies it, and says that what he said was that it was worth $10,000 as much as any property in Tappan. But that was relative, and there are no means of judging whether it was even extravagant. It is quite clear, however, that the expression of value, whatever it might have been, was not of a kind to be ranked as a misrepresentation. It was manifestly mere " dealing talk." Mrs. Van Wart, daughter of the complainant, testifies that Tillotson, on the occasion when he first went to see the complainant's property, said he had been around the place, and liked it very much, and thought it a very fine one. The complainant's agent says that when, after Tillotson took possession of the Englewood property, he returned to get some articles which had been left there, he saw Tillotson, and the latter told him to tell his (Tillotson's) son, when he returned to Tappan, that he was " terribly homesick ; " and he added that he thought he would not make the exchange—that he was too old to take charge of such a property. Tillotson's son Daniel says that the reason his father left the complainant's property after he had taken possession, was that he was disgusted with the trade; that he had something which he could not shoulder; that he could not get a clear title. He adds that his father told him he would not trade— that he would pay his $500 (the forfeit), according to the contract. Neither in this nor in any other testimony in the cause is there any complaint or allegation that deceit has been practiced on Tillotson, whether in misrepresentation of value or otherwise. The fact seems to be that he, soon after the exchange, became dissatisfied with the bargain, and was anxious to escape compliance with it. The objection which he makes to the contract—that it is uncertain in its description of the property to be conveyed by him—is entirely untenable. It is based on the fact that in the contract he says that part of his property was conveyed to Henry Frank and Daniel Frank, by deed dated March 23d, 1867, whereas it was conveyed to Henry Frank alone by deed of that date. It is to be observed that he seeks to take advantage of the alleged uncertainty in his own description of his

land. But there is, in fact, no room for the objection. It is enough if the property be so described as that it may be ascertained with certainty. *Camden and Amboy R. R. Co.* v. *Stewart, 3 C. E. Gr. 489; Lewis* v. *Reichey, 12 C. E. Gr. 240.* The reference to Daniel Frank is evidently a mere mistake, which a reference to the deed itself would correct; and, besides, Tillotson admits, in his testimony, that the property claimed by the complainant—the six lots and two houses thereon—is the property which he agreed to convey in exchange.

Nor can the defence that the complainant has an adequate remedy at law, avail the defendants. The provision for forfeiture contained in the agreement was intended as a penalty. *Whitfield* v. *Levy, 6 Vr. 149.* It applies the forfeiture to any one or all of the specifications; that is, on the part of the complainant, to the sale of her land and the giving of the $2,750 mortgage; on the part of Tillotson, to the sale of his land and the loan of $500. Moreover, Tillotson, as he admits in his testimony, and as is otherwise fully proved, gave possession to the complainant under the agreement, and the complainant yielded up to him under the agreement the possession of her property, and he took it. The complainant has expended money in improving the Tillotson property. Tillotson is not in a position successfully to resist the complainant's demand for specific performance with the claim that the complainant has a remedy at law. The contract was partly performed when possession was given and taken. Tillotson will be decreed to perform his contract specifically. Since the commencement of this suit the complainant's property has been sold and bought in by the mortgagee under foreclosure of the $4,000 mortgage. The complainant, however, tenders herself ready to give to Tillotson a good title to the property, subject to encumbrance equal to the amount of $4,000, with interest at seven per cent. per annum, from October 12th, 1876. Opportunity will be afforded to her to obtain this title, and also to obtain proper title by deed for so much of her land as is not covered by the deed to her therefor. *Fry on Spec. Perf.* § 872. The delay in bringing suit is accounted for as having been occasioned by the negotiations of the parties for a

settlement, and it appears very clearly that, in order to prevent proceedings for specific performance, Tillotson pretended to convey by a merely colorable deed, dated June 5th, 1877, to his son Daniel, part of the Englewood property (the part of the property on which Daniel lived when the contract for exchange was made), as is admitted, without consideration ; the son merely claiming that it was given to him by his father over four years before the date of the deed.   And, with the same object, Tillotson, previously, by mortgage dated August 31st, 1876, but not acknowledged until October 9th of that year, pretended to mortgage the whole property to his son Moses, to secure $2,750. That mortgage was without consideration, and both it and the deed to Daniel were taken with full notice of the contract.  The complainant insists that it was agreed that the mortgage of $2,750 was to be payable in three years.  Tillotson says that there was nothing definite said about the time (the contract is silent on the subject), but adds that he remarked to Mr. Jackson that it was "most customary to make them [mortgages] for one year."   By his answer he admits that the mortgage was to be payable in one year.   There is no satisfactory proof that the mortgage was to be payable at any more distant period.  In the absence of the admission of Tillotson, the contract would be construed as providing for a mortgage payable immediately. *Green* v. *Richards, 8 C. E. Gr. 32, 536.*   The mortgage to be given for $2,750 will be payable in one year from the time of delivery, with interest on $2,250 at seven per cent. per annum, from October 12th, 1876, up to July 4th, 1878, and at six per cent. from that time, and on the whole of the $2,750 at six per cent. from the time of the delivery of the mortgage, and it will contain the usual insurance clause.   Both parties admit that the mortgage was to be payable at a future time, with interest, but they differ as to the time.

*G. R. Dutton* and *G. Collins*, for appellant.

I. The contract is grossly unfair.   *13 Ves. 225 ; Torrey* v. *Buck, 1 Gr. Ch. 366, 374-5 ; Stoutenburgh* v. *Tompkins, 1 Stock.*

Tillotson *v.* Gesner.

*332, 335–6 ;  Craven* v. *Sickel, 1 Ves. 60 ;  Calverly* v. *Williams, 1 Ves. 210 ;  Cooper* v. *Dunne, 1 Ves. 565 ;  Benedict* v. *Lynch, 1 Johns. Ch. 375 ;  Roach* v. *Rutherford, 4 Desauss. 131 ;  Waters* v. *Travis, 9 Johns. 450 ;  Pratt* v. *Carroll, 8 Cranch 471 ;  Miller* v. *Chetwood, 1 Gr. Ch. 199, 208 ;  Ely* v. *Perrine, Id. 296 ;  Stoutenbergh* v. *Tompkins, 1 Stock. 332 ;  Plummer* v. *Keppler, 11 C. E. Gr. 481 ;  Hopper* v. *Hopper, 1 C. E. Gr. 147 ;  Underwood* v. *Hitchcox, 1 Ves., sen., 279 ;  King* v. *Hamilton, 4 Pet. 311 ;  Seymour* v. *Delancy, 6 Johns. Ch. 222 ;  Rodman* v. *Zilley, Saxt. 320, 324, 325 ;  Savage* v. *Taylor,* cited in *Seymour* v. *Delancey, 6 Johns. Ch. 222 ;  Pinner* v. *Sharp, 8 C. E. Gr. 274, 280 ;  Townsend* v. *Stangroom, 6 Ves. 328 ;  Mortlock* v. *Butler, 10 Ves. 292 ;  Suffern* v. *Butler, 4 C. E. Gr. 205.*

II. The contract does not designate with certainty the premises to be conveyed by Tillotson.  *Robeson* v. *Hornbaker, 2 Gr. Ch. 60 ;  Underwood* v. *Hitchcox, 1 Ves. sen. 279 ;  Carr* v. *Passaic L. & B. Co., 4 C. E. Gr. 426 ; S. C., 7 C. E. Gr. 86 ;  King* v. *Ruckman, 5 C. E. Gr. 317 ;* see cases cited by defendant in *King* v. *Ruckman, 5 C. E. Gr. 330, 331, 332.*

III. Complainant's title to Tappan property.  Court will not compel a purchaser to take a doubtful title.  *St. Mary's Church* v. *Stockton, 4 Hal. Ch. 520, 531 ;  Chambers* v. *Tulane, 1 Stock. 146 ;  Vreeland* v. *Blauvelt, 8 C. E. Gr. 483 ;  Dobbs* v. *Norcross, 9 C. E. Gr. 327 ; 2 Pars. on Con. 564;  Johnson* v. *Hubbell, 2 Stock. 332, 342 ;  Story's Eq. Jur. 749, 750 ;  Read* v. *Livingston, 3 Johns. Ch. 431, 500 ;  Lockyer* v. *Dehart, 1 Hal. 450 ;  Laurence* v. *Lippencott, 1 Hal. 473 ;  Case* v. *Phelps, 39 N. Y. 167 ;  Robinson* v. *Stewart, 10 N. Y. 195 ;  Story's Eq. Jur. 353 ;  Mulford* v. *Tunis, 6 Vr. 256 ;  Garr* v. *Hill, 1 Stock. 215 ;  Tantum* v. *Green, 6 C. E. Gr. 369 ;  De Witt* v. *Sickle, 2 Stew. Eq. 209, 215 ;  Randall* v. *Vroom, 3 Stew. Eq. 353 ;  Story's Eq. Jur. 369.*

A voluntary settlement by a person who is indebted, is void as to existing creditors.  *Read* v. *Livingston, 3 Johns. Ch. 481, 500 ;  Bayard* v. *Hoffman, 4 Johns. Ch. 450 ;  Seward* v. *Jackson, 8 Cow. 406 ;  Jackson* v. *Peck, 4 Wend. 300 ;  Van Wyke* v. *Seward, 6 Paige 62 ;  Robinson* v. *Stewart, 10 N. Y. 190, 195 ; 1 Story's Eq. Jur.* § *395 ;  Beekman* v. *Montgomery, 1 McCart. 111 ;*

21

Tillotson *v.* Gesner.

*Smith* v. *Vreeland, 1 C. E. Gr. 201; Tantum* v. *Green, 4 C. E. Gr. 105; S. C., 6 C. E. Gr. 364, 369; De Witt* v. *Van Sickle, 2 Stew. Eq. 210, 215.*

IV. The contract is without mutuality. *Story's Eq. Jur. 723; Fry on Spec. Perf. 286; Hopper* v. *Hopper, 1 C. E. Gr. 147–8; Stoutenbergh* v. *Tompkins, 1 Stock. 342–4; Johnson* v. *Hubbell, 2 Stock. 342; Welch* v. *Bayard, 6 C. E. Gr. 187; St. Mary's Church* v. *Stockton, 4 Hal. Ch. 520, 532; Cheddick* v. *Marsh, 1 Zab. 466.*

*R. P. Wortendyke,* for respondent, cited—

*Whitfield* v. *Levy, 6 Vr. 149; Cotheal* v. *Talmage, 9 N. Y. 551; Colwell* v. *Lawrence, 38 N. Y. 71; Ousler* v. *Butler, 3 C. & P. 240; Reynolds* v. *Bridger, 37 Eng. L. & Eq. 130; Noyes* v. *Phillips, 60 N. Y. 408; Hoag* v. *McGinnis, 22 Wend. 165; Spear* v. *Smith, 1 Den. 464; Bagley* v. *Peddie, 16 N. Y. 464; Lampman* v. *Cochran, 16 N. Y. 275; Staples* v. *Parker, 41 Barb. 468; Clement* v. *Cash, 21 N. Y. 253; Bage* v. *Millard, 12 N. Y. Leg. Obs. 57; McNill* v. *Clark, 7 Johns. 465; Clumn* v. *Moseby, 1 Bail. 136; Welland Canal* v. *Hathway, 8 Wend. 480; Dezell* v. *Odell, 3 Hill 215; 1 Addison on Con. 745 § 496; Hopson* v. *Trevor, 1 Str. 533; French* v. *Macale, 2 Dr. & War. 269; Long* v. *Bowning, 33 Beav. 585; Jackson* v. *Barker, 2 Edw. 471; Beale* v. *Hayes, 5 Sandf. 640; Cheddick* v. *Marsh, 1 Zab. 463.*

This is a suit for a specific performance of a contract for the exchange of lands. The agreement is in writing, dated August 31st, 1876, and by it the complainant, Mary Ann Gesner, bargained to exchange and convey to the defendant, Daniel Tillotson, several parcels of land and premises at Tappan, Rockland county, in the state of New York, and the defendant bargained to exchange and convey to the complainant certain lots and premises at Englewood, Bergen county in the state of New Jersey, on or before the 1st day of October then next. Tillotson agreed to lend to the complainant $500, and she contracted to

give him a mortgage on the lands at Englewood, to be conveyed to her, for $2,750, which included the sum of $500 above named, and $2,250, the amount to be paid as difference in the exchange of the properties.   Other particulars are given in the opinions.

The opinion of the court was delivered by

SCUDDER, J.

In examining this case, the first question which presents itself is in reference to the validity of the title of the complainant to the lands at Tappan which she, by this bill, seeks to force on the defendant against his will.   This is the consideration which gives value to the contract; if it fails there is no mutuality in the agreement, and it should not be enforced.   This title is based on a conveyance from Isaac H. Bartow and wife to Abraham Van Wart, dated April 5th, 1871.   The property described in the deed is that designated in the agreement to be conveyed to the defendant. Isaac H. Bartow obtained this property from John R. Verbryck, by deed dated May 1st, 1849.   It is said that the description contained in this deed does not cover the northern part of the lot of land and premises to be conveyed, and there is a small gore of land on the southerly side which is omitted.   There is an apparent error in the boundaries of the latter deed, but Bartow and Van Wart have had undisturbed and undisputed possession of the entire lands, as owners, since 1849, and no adverse claim of title is shown.   This objection cannot, therefore, prevail.

It also appears, by the agreement, that the property at Tappan was to be conveyed to the defendant, Tillotson, subject to a mortgage of $4,000.   During the controversy between these parties, this mortgage has been foreclosed and the premises sold, and bought in by the mortgagee, but the complainant, in the bill of complaint, offers specifically to perform the agreement in all things on her part, which includes the obtaining of this title and the conveyance of the lands with no greater encumbrance thereon than was stipulated for, and subject to the decree of the court. The defendant will therefore be amply protected from a conveyance of his lands until a proper assurance of the title of the com-

plainant's lands named in the agreement is made. This has been provided for in the decree made by the chancellor.

Another objection made is, that the complainant, Mary Ann Gesner, held the title by a voluntary conveyance from her son-in-law, Abraham Van Wart, which was made to defraud his creditors, and is voidable by them. The search for title made by the defendant's attorney, after the agreement for exchange had been executed, and after the parties had taken possession of the respective properties under their contract, showed these facts—that a judgment of the supreme court of the state of New York was rendered March 8th, 1875, at the suit of Margaret Mann, administratrix &c., against Abraham Van Wart and Matilda, his wife, for the foreclosure and sale of mortgaged premises, not named in this agreement, and against Abraham Van Wart for any deficiency that might arise; that, April 29th, 1875, a judgment was obtained in the supreme court of the state of New York, and docketed in Rockland county, in favor of Margaret Mann, administratrix &c., against Abraham Van Wart, for $1,308.45, the deficiency above named. On April 22d, 1875, seven days before this judgment for deficiency was obtained, Van Wart conveyed this property at Tappan to the complainant, Mary Ann Gesner, his mother-in-law, for the consideration, therein expressed, of $1; and on April 29th, 1875, the day on which the judgment was rendered against him, the complainant conveyed the premises to Matilda Van Wart, wife of Abraham Van Wart, for the consideration, therein expressed, of $1. These deeds were evidently voluntary conveyances, by which the title to these lands was changed from Van Wart to his wife, at the very time of the recovery of the judgment for deficiency against him. The judgment was not a legal lien on the land, because, on the day it was recovered, the conveyance had been made to Mrs. Van Wart, the defendant's wife, but if the deeds were made to defraud creditors they were voidable by them, and if the defendant, Tillotson, took title after his searches had disclosed these facts, he would be charged with notice of the fraud, if it existed, and his title could also be assailed by the creditors of Van Wart. On August 31st, 1876, while the title thus stood in

the name of Matilda Van Wart, this agreement was made for the exchange of these lands, in the name of Mary Ann Gesner, and was signed by Abraham Van Wart as her agent. These acts of alleged fraud on creditors are set out in the defendant's answer, and appear in the proofs.

It is apparent, from the testimony of the defendant and from the evidence of David Van Wart, an attorney, of New York, who acted for his brother, Abraham Van Wart, in the attempts that have been made to effect a settlement between these parties, and to pass the titles, and also from the statements made by Abraham Van Wart, that the defendant's attorney did, at their first meeting after the contract was signed, and at the time appointed for exchange of titles, object to the existence of this judgment. Different projects have been suggested for settlement, but there has been no waiver or release of this objection to the title.

Although the deeds from Abraham Van Wart to Mrs. Gesner, and from her to Mrs. Van Wart, contain only a nominal consideration of $1, there has been offered in evidence a mortgage given by Abraham Van Wart to George M. Gesner, husband of Mary Ann Gesner, on the Tappan property, dated August 24th, 1871, which, it is said, was part of the consideration of the deed from Van Wart to Mrs. Gesner; and that the deed from Mrs. Gesner to Mrs. Van Wart was given to take effect at the mother's death, instead of a will. The amount is not given in the memorandum of exhibits in possession of the court, but it is not important. George M. Gesner was living, and it does not appear how his wife became the owner of this mortgage, which has never been recorded, nor has any assignment thereof to her been shown. The allegation that this mortgage entered into the consideration of the deed to Mrs. Gesner is thus stated by David Van Wart in his testimony, and this is the only evidence by any witness on this subject:

"I think the main question, primarily, was the good faith and validity of the conveyance from Abraham Van Wart to Mrs. Gesner; it was then stated that the cancellation and surrender of that mortgage was, in truth and fact, part of the consideration of that conveyance."

Nothing more particular is given about this mortgage, or

how it entered into the consideration of the deed, or why it was never recorded.    After the articles of agreement were signed between the parties to this suit, the defendant's attorney testifies that he was told by David Van Wart of an unrecorded and uncanceled mortgage on the Tappan property, that had been held by David Gesner, and that he replied that it should be canceled, now that he had notice of it, for it was the same to them after notice as a recorded mortgage.    This mortgage, with an endorsement of satisfaction thereon, was afterwards produced and shown to the defendant's attorney, to satisfy him that it was no longer an existing encumbrance on the property. It is manifest, from this evidence, that Abraham Van Wart controlled this property, and the different title papers relating thereto, in his own interest, and according to his own will.    And now the question may be asked, What careful attorney, in searching this title, would advise a client to take it and pay a full consideration?    Or who will say that it would be safe, if the judgment creditor of Abraham Van Wart shall bring a suit to set the conveyances to Mrs. Gesner and Mrs. Van Wart aside as fraudulent?

It is the duty of the court to see that the objections to the title are not frivolous, or intended only to delay and embarrass the complainant; and such objections should not be treated so seriously as to be received as excuses for the non-performance of a contract.    But, on the other hand, a court of equity will not compel a party to take and pay for an estate of which only an imperfect title can be given.    The distinction is also to be made between the case where the apparent defect in the vendor's title is such an one as may be expected to be removed on a reference consistently with equity practice, and that where the court will not allow the complainant, seeking a specific performance, to make up a case in this way, but will only dismiss his bill without prejudice to a new bill.    *Blatchford* v. *Kirkpatrick, 6 Beav. 232 ; Clay* v. *Rufford, 19 Eng. L. & E. 350 ; Girrer* v. *Bastaid, 2 Phil. 619 ; 1 De G. M. & G. 69.*    The true rule is stated in *3 Pars. on Con. (6th ed.) \*380,* that if the character of the title be doubtful, although the court were able to come to the conclusion that, on the whole, a title could be made that would not

Tillotson *v.* Gesner.

probably be overthrown, this would not be good title enough; for the court have no right to say that their conclusion, or their opinion, would bind the whole world, and prevent an assault on the title.  The purchaser should have a title which shall enable him not only to hold his land, but to hold it in peace; and if he wishes to sell it, to be reasonably sure that no flaw or doubt will come up to disturb its marketable value.  The court cannot satisfactorily or conclusively settle a title in the absence of parties who are not before them in the suit to assert their estate or interest in the lands.  These statements accord with the conclusions from cases in the notes to *Seton* v. *Slade, 3 Lead. Cas. in Eq. 67, 79, 87, 88;* Fry *on Spec. Perf. ch. xvii. 347; 1 Story's Eq. Jur. 749,* and with cases in our own courts: *St. Mary's Church* v. *Stockton, 4 Hal. Ch. 520; Chambers* v. *Tulane, 1 Stock. 146; Johnson* v. *Hubbell, 2 Stock. 332, 342; Vreeland* v. *Blauvelt, 8 C. E. Gr. 483; Dobbs* v. *Norcross, 9 C. E. Gr. 327.*  In the last case, the chancellor says that the court will never compel a purchaser to take a title where the point on which it depends is too doubtful to be settled without litigation, or where the purchase would expose him to the hazard of such proceedings.

Where there is a conveyance of land, voluntary on its face, made by a defendant in a suit, just before a judgment for a large sum is rendered against him, which judgment would be a lien on the land if such conveyance had not been made, and the evidence fails to show, by strong proof, that it was made *bona fide* and for a valuable consideration, a case is made for the application of the rule above stated, and the specific performance of an agreement for the purchase of the land will not be enforced.

Although the question of the sufficiency of the title often arises after the reference of title to a master has been made, yet the bill may be dismissed at the hearing, if the defect in title has been prominently put forward in the pleadings and proofs, and the court can then decide the question.  *Fry on Spec. Perf. ch. xvii. *253.*  This case, on the proof before us, looks like an attempt to impose a hard bargain and a suspicious title on an old man seventy-six years of age, and is not entitled to the favorable consideration of a court of equity on bill for specific performance.

Mutual Life Ins. Co. *v.* Sturges.

For these reasons, without considering other questions which have been raised, the bill should be dismissed and the decree reversed, with costs on appeal and in the court of chancery.

*Decree unanimously reversed.*