## EVA W. DAY

### *v.*

## WILLIAM J. KINGSLAND.

[Submitted May 13th, 1898. Filed September 2d, 1898.]

1. Vendor claimed under a decree of partition between "surviving heirs" entitled under a will. The record of the suit showed that two heirs had, more than thirty years previously, departed and had not since been heard from, and there was evidence therein that one of them had died young and without children, and that a third had gone away more than fifty years before. The bill, without making them parties, alleged their death without issue before the estate vested, and that a named defendant was the only heir to their interest — *Held*, that the decree made the record title perfect.

2. Where the record title of a vendor, consisting of a decree in partition, shows that all parties apparently in interest had been parties to the partition suit, the burden of proof is on the purchaser to show that some necessary parties were omitted, whereby the title was rendered unmarketable.

3. Where the purchaser at a partition sale had with his privies held the land adversely for forty years, under a decree finding that certain heirs were deceased without issue, which heirs, if alive, would have been entitled to a share in the land, the possibility that, under *Gen. Stat. p. 1972 ¶ 2*, making

Day v. Kingsland.

the limitation of actions thirty years, and *Gen. Stat. p. 1977 §§ 16, 17,* establishing that of other actions concerning real estate at twenty years and suspending the same as to persons *non compos* and infants, there are persons who can assert claims to such lands, is too remote to cast a doubt on the marketability of the title.

On bill for specific performance, &c.

*Mr. John J. Joyce,* for the complainant.

*Mr. Harry V. Osborne,* for the defendant.

EMERY, V. C.

This is a bill by the vendor for the specific performance of a written agreement for the purchase of lands against the vendee, who refuses to accept the deed and carry out the agreement upon the ground that the complainant's title to the lands is not marketable. Complainant's title to the lands is derived through proceedings for the partition of lands between the heirs of one Daniel Riggs. Daniel Riggs, who died seized of the premises in the year 1786, by his will, dated in October of that year, devised the premises in question to his son, Benjamin, and his heirs, with the provision that if he died without issue that the land given to Benjamin "shall fall to my surviving heirs." Benjamin died in 1854 without issue, and the bill for partition among the heirs of Daniel Riggs surviving Benjamin was filed August 25th, 1855. In this bill for partition it was alleged that Elias Bruen, John Bruen and Rachel Bruen, three of the children of Hannah Bruen (a deceased daughter of Daniel Riggs), removed to the city of Philadelphia more than thirty years previous to the filing of the bill, and had not been heard from in that time, and that said Elias, John and Rachael Bruen long since departed this life without leaving lawful issue, and that one Daniel Jenkins, who was made defendant, was the only heir-at-law then living of the said Hannah Bruen. Neither of these three persons, nor any persons as their heirs, were made defendants to the bill. If living they would each have been entitled to one-twentieth of the premises sought to be partitioned.

An ancient witness, Mrs. Hannah Bell, called before the master in the partition proceedings, who knew the family of Hannah Bruen, and who was then in her eighty-fourth year, testified that John Bruen, one of the children of Hannah, died young without children; that Elias went away to the South or West and she had never heard from him since 1820, and that when she last heard from him he was not married. She also testified that Rachael went away more than fifty years previously and had never been heard of since.

Final decree for sale of the premises was made, and a sale thereunder was made on May 22d, 1856, to one Samuel A. Baldwin, under whom complainant claims by divers mesne conveyances. Adverse possession of the premises by Baldwin and his successors in title, from the time of the purchase up to the present time, has been proved. It has not been proved by any evidence offered in this suit that either of these three children of Hannah Bruen, or any heirs of any of them, were living in 1854, at the date of Benjamin's death, nor has any proof upon that subject been offered by either complainant or defendant.

The defendant objected to the title because of the failure to make these three children, or their heirs, parties to the partition proceedings, and the same objection is now urged as a defence to this suit, and it is urged that claimants under these heirs may exist, and for this reason the title is not marketable, and specific performance should not be decreed.

I had occasion to consider the decisions of our courts in reference to the question of marketable titles in *Lippincott* v. *Wikoff, 9 Dick. Ch. Rep. 107, 114 (1895)*. Where the alleged doubt in relation to the title is one of fact, as in this case, the rule which has been settled by our courts is that the court will never compel a purchaser to take a title where the point on which it depends is too doubtful to be settled without litigation or where the purchase would expose him to the hazard of such proceedings. *Dobbs* v. *Norcross, 9 C. E. Gr. 327 (Chancellor Runyon, 1874); Tillotson* v. *Gesner, 6 Stew. Eq. 313, 327 (Errors and Appeals, 1880); Cornell* v. *Andrews, 8 Stew. Eq. 7 (Chancellor Runyon, 1882).*

Day *v.* Kingsland.

In each of these cases, however, there was proof in the case itself of facts which cast a doubt upon the title, and specific performance was therefore refused. The other New Jersey cases upon the subject appear to have arisen where the doubt in relation to the title depended upon a doubtful question of law and not of fact, and as to these cases different considerations often apply. *Lippincott* v. *Wikoff, supra.*

No proof whatever has been offered in this cause showing the existence of either of these three children of Hannah or of any heirs of either of them at the time of the partition proceedings, and in the absence of any evidence in this suit rendering it probable that they or their heirs were then in existence and should have been made parties, the vendee cannot set up the failure to make them parties in order to avoid the contract. The mere possibility of the existence of these heirs or persons claiming under them, based on suspicion or conjecture and without the production of any evidencs to support the conjecture, is not sufficient to relieve the vendee. The principles applicable to cases like the present are discussed and the rule stated in a late case in which the existence of supposed heirs was a question. *Greenblatt* v. *Herrmann, 144 N. Y. 13 (1894).* "The title," says Chief-Justice Andrews, "must either be defective in fact or so clouded by apparent defects, either in the record or by proofs outside of the record, that prudent men, knowing the facts, would hesitate to take it." The record title here (the partition proceedings) shows by the allegations in the bill that the three children of Hannah Bruen were then dead, and all dead without issue, and final decree was made in the suit, based on the proof, or attempted proof, of that allegation. It was held in this case that where the record title was good, the burden was upon the vendee to show the facts making the title doubtful, and also that the possibility of the existence of heirs, based on any claim and not on proof of any facts to support it, did not raise a reasonable doubt as to the validity of a title good upon the record.

The adjudication by final decree in the partition proceedings is sufficient to make the record title perfect, so far as the partition proceedings go, and this adjudication so made puts upon

Day v. Kingsland.

the defendant the burden of proving in the present case facts which would render it so probable that these heirs or some of them were then alive, that a prudent man would hesitate to accept the title. Such proof has not been offered, and I therefore hold that the objection cannot be sustained on this ground.

A second answer to the objection to the title is furnished by the proofs made in the present case showing adverse possession for over forty years by the complainant and those under whom she claims. This possession, originating under a *bona fide* purchase, will, under our Limitation act (*Gen. Stat. pp. 1972, 1977 §§ 2, 16, 17*), bar all adverse claims arising under the supposed heirs, unless they arise under the provisos or one of them.

These heirs, or persons claiming under them, cannot be brought within the provisos of the act, except upon the supposition of the occurrence of an entire series of circumstances so remote and improbable that in the absence of any proof upon the subject, the mere assumption of their probable occurrence cannot be made the basis of a judicial determination that the title is clouded. By the body of these limitation acts, every one of the supposed heirs who was, in fact, living in 1854, is barred under the provisos to sections 16 and 17 ; only infants and persons *non compos* (and not *femes covert*) are relieved, and the possibility of claiming the benefit of these provisos is so remote that it is difficult to work out the entire series of contingencies under which a possible claim may arise. The death of one of the heirs previous to 1854, leaving an insane child, who was living and still insane as late as 1878, is the least complicated claim which can arise under the provisos. An infant child born in 1854 would have been barred in 1881, under section 2, and unless such infant died before 1876, leaving an infant heir who did not come of age before 1893, there would be no relief from the statutes under these provisos by reason of supposed infancy.

In the absence of any proof suggesting the probability of the happening of the series of contingencies upon which any possible claim under the provisos must be based, it must be held that the occurrence of the entire series of contingencies is so remote and improbable as not to render the title unmarketable.

A decree for specific performance will therefore be advised.