53 N.J. Super. 209 (1958)
147 A.2d 73
MARGARET FERRY GAUB, INDIVIDUALLY AND AS EXECUTRIX OF THE LAST WILL AND TESTAMENT OF ANNA E. FERRY, DECEASED, AND FREDERICK GAUB, HER HUSBAND, PLAINTIFFS-APPELLANTS,
v.
NASSAU HOMES, INC., A CORPORATION OF THE STATE OF NEW JERSEY, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued September 17, 1958.
Decided December 16, 1958.
*210 Before Judges PRICE, SCHETTINO and HALL.
Mr. Robert E. La Mura argued the cause for plaintiffs-appellants (Mr. John W. Applegate, attorney).
*211 Mr. Ernest F. Keer, Jr., argued the cause for defendant-respondent (Messrs. Boyd, Dodd, Keer & Booth, attorneys).
The opinion of the court was delivered by PRICE, S.J.A.D.
By this appeal plaintiffs, in an action for specific performance of a written contract for the sale of realty, seek the reversal of a judgment of the Superior Court, Chancery Division, dismissing their complaint on the merits and entering judgment in favor of defendant on its counterclaim for $14,000 paid by it under the contract. After the completion of plaintiffs' case defendant offered no proofs but moved for judgment on the ground that the right thereto was established by the evidence presented by plaintiffs.
Defendant had refused to accept plaintiffs' conveyance because it alleged that two courses in the description in the contract (the description being taken from plaintiffs' deed and repeated in the deeds of their predecessors since 1859) could be plotted as part of the total deed description in such a way as to result in the plaintiffs' property comprising substantially less acreage than reflected in the aforesaid contract.
The contract was dated December 6, 1955. Under its terms title to the property was to close August 1, 1956. Thereafter the closing date was extended by mutual agreement but defendant refrained from closing title on the date specified in the last extension. Plaintiffs thereupon on February 18, 1957 served a notice on defendant making time of the essence and requiring defendant to accept plaintiffs' deed on March 7, 1957. Defendant ignored the notice and refused to accept plaintiffs' deed.
Under the aforesaid contract between the parties the purchase price was $235,000 of which sum $14,000 on account of the purchase price was paid by defendant by an initial installment of $4,000 and by a subsequent payment of $10,000.
The premises in question were described in former deeds in the title chain as containing approximately 225 acres *212 of land in Madison Township, Middlesex County, New Jersey, and as being part of a tract known as the Tone Farm. In the early part of the last century the farm, containing 255 acres, was owned by one Joshua Smith. The property was thereafter partitioned and in 1849 surveys were made in conformity therewith. Hezekiah Smith, the son of Joshua Smith, later became the owner of the farm and in 1854 conveyed thereout two parcels containing approximately 20 and 10 acres respectively. He sold the remaining lands to one Preston in 1859. It was in that conveyance that the two courses in question first appeared in plaintiffs' chain of title.
Defendant contended that plaintiffs should have instituted an action to quiet title instead of the action for specific performance which sought to compel defendant to accept a conveyance which might expose it to the hazard of litigation or with reference to which it might have to institute an affirmative action to quiet the title. The trial court, as aforesaid, upheld defendant's contention.
The criticized description of the premises in question was by metes and bounds and consisted of 23 courses, monumented by certain calls and references. The early deeds in the chain of title by way of recital referred to the property as "Premises known as the Tone Farm and Part of the Real Estate of Joshua Smith in the Township of South Amboy, N.J."
The description contained in the contract in question was the same one of 23 courses appearing in the earlier deeds with certain added recitals which excepted therefrom described portions of the property conveyed by plaintiffs' predecessors in title during the years 1936 to 1953.
The aforesaid description incorporated reference to two old surveys. The identification of the beginning point of the tract was a cedar tree standing on the west side of Deep Run, a flowing stream. Its original location is undisputed. The description contained the following recital preceding the first course: "thence by a survey of A.J. Disbrow, A.D. 1849." Then followed 14 specific courses with occasional *213 monumental references. The 14th course went "to the corner of a tract conveyed to William Smith by deed of March 1854." The description then read: "thence along the same and another small lot conveyed away by the said party by survey of 1854 as the needle then pointed the four following courses and distances, to wit: * * *." Then followed courses 15 to 18 inclusive. The problem raised by the deed description was caused by the presence of courses 19 and 20. After reciting the compass direction and distance of the 18th course, the following call preceded the 19th course: "thence by the original survey of 1849 as the needle then pointed * * *." Without reference to any other survey, there followed the remaining courses including course 22 which went to Deep Run, and course 23 which read: "down Deep Run its various courses to the cedar tree at the beginning."
The inclusion of courses 19 and 20 in the description containing 23 courses was claimed by plaintiffs to be incorrect. However they contended that, as the call in the deed at the commencement of the 19th course was "thence by the original survey of 1849 as the needle then pointed," if one followed that call commencing at that point in the description, eliminated courses 19 and 20 and recognized and followed from then on only courses 21, 22 and 23, which were included in said survey, the plotting would close. They asserted that the 1849 survey call was controlling and took precedence over the courses and distances reflected in the 19th and 20th courses which plaintiffs claimed were included erroneously; that it was so apparent that the two courses in question were included improperly that they should be treated as surplusage and ignored.
Defendant however showed that, if the description were plotted by including, instead of discarding, the 19th and 20th courses and by immediately following with the 21st, 22nd and 23rd courses, there would likewise be a closure because the call of the 22nd course was to a definite boundary line  the brook known as Deep Run; that, although the 22nd course so plotted to "Deep Run" would be much shorter than as described in the contract (350 to 440 feet as compared *214 with 1,035 feet), it would result in a closure because the 23rd course as stated was "down Deep Run its various courses to the cedar tree at the Beginning." Plaintiffs' engineer admitted the correctness of defendant's contention as to the closure resulting from including the 19th and 20th courses in the plotting but declared that it was illogical and incorrect to achieve that result by ignoring the aforesaid "1849 call." Such tract, so plotted by including the 19th and 20th courses and without reference to the "1849 survey call," would contain approximately 25 fewer acres than the acreage encompassed by the description if plotted by excising the two courses therefrom. The location of the acreage which would be excluded by such plotting was the southern portion of the former Tone farm. Because the inclusion of courses 19 and 20 in a plotting of the property without reference to the 1849 survey could result in a closure the defendant contended that heirs of Hezekiah Smith might assert ownership of the 25 acres in question; that the difficulty resulting from the misdescription was one which could be resolved only by an action to quiet title and that defendant should not be forced to perform the contract and then be compelled to resort to court action to clear the title.
Plaintiffs contended that proofs submitted at the trial showing the physical boundaries of adjoining properties confirmed the fact that the portion of the Tone farm described as aforesaid did comprise 225 acres and that said boundaries coincided with the location of those of the Tone farm for which plaintiff was contending; that the length and direction of the aforesaid courses 21 and 22 reflected the true distance and direction from the end of course 18 along the boundary of adjoining lands to Deep Run; that the uncontradicted evidence showed that for over a half century there had been no challenge of the boundaries claimed by plaintiffs to encompass the true acreage as delineated by the description if courses 19 and 20 were eliminated; that the testimony of plaintiffs' engineer established that examination of the record title of the property revealed that courses 21, 22 and part of 23 "are the exact lines in a deed from John *215 William Tone to William Tone in 1806" and that "these lines take us past the questioned point and preclude any other interpretation of the description except that which permits it to run in accordance with the survey of 1849 * * *"; that tax bills as far back as 1905 showed the acreage to be 225 acres.
Plaintiffs' engineer testified that it was his opinion that the person who originally prepared the description in question had inadvertently included courses 19 and 20 and consequently they should be considered as surplusage and disregarded. He further testified that he examined the premises in question and determined that, by eliminating courses 19 and 20 and projecting the 21st course immediately after the 18th course, he was able to locate monuments situated at the positions called for in the description.
Plaintiff Margaret Ferry Gaub testified that she lived in the premises from 1910 to 1927; that if courses 19 and 20 were excluded the remaining courses would complete the boundary of the farm as she had known it.
The trial court in colloquy with counsel, after observing that the Smith heirs would not be bound by any judgment it might enter, said:
"* * * I think it highly probable that courses 19 and 20 were erroneously included in the deed, but they are there and they may be plotted in such a way as to create a closure. This would not seem to be a reasonable way to plot them and I doubt if that question were directly before me with all parties whom I consider to be necessary here, I doubt that I would conclude that they should be plotted that way. More likely I think I would conclude that they were erroneous and should be disregarded. But if they are plotted to create a closure in the manner in which they appear on Exhibit P-4, Number 2, it is obvious that the defendant would receive substantially less land than is called for by the contract.
As I have already said, I don't think that there is before me in this case, under the facts presented in this case, there is before me the issue of how much land the plaintiffs have. What is presented to me is the question of whether or not in the present state of the record the heirs of Smith could create a reasonably debatable question by an action of ejectment should they subsequently undertake such an action. It is my feeling that although they would probably be unsuccessful, they would have prima facie right of action based upon the argument that 19 and 20 should not be *216 omitted from consideration and can be so laid out as to create a closure. The very fact that such an action can be brought invokes a consideration of the established rules relating to the remedy of specific performance, and cardinal in those rules is that which calls upon the court to deny specific performance if there is a debatable question as to title. The burden is upon the plaintiff to establish title beyond a reasonable doubt, and I cannot say that the proof before me is in that condition that the title to the entire property is shown beyond reasonable doubt."
Plaintiffs assert in their brief that the defense of unmarketability of title was an affirmative defense, the burden of proving which was on defendant because there appeared "at the close of plaintiffs' case a title sufficient on the record," citing Day v. Kingsland, 57 N.J. Eq. 134 (Ch. 1898); that defendant must show the existence of persons "who could possibly subject defendant to the hazard of future litigation," and that it became necessary for defendant "to show a hazard that had a reasonable chance of success as viewed by the court in the suit for specific performance." In support of the latter contention plaintiffs place reliance on Day v. Kingsland, supra; Hoffman v. Perkins, 3 N.J. Super. 474 (Ch. Div. 1949); Casriel v. King, 141 N.J. Eq. 515, 533, 534 (Ch. 1948), affirmed 2 N.J. 45 (1949); Barger v. Gery, 64 N.J. Eq. 263 (Ch. 1902). They contend that defendant "failed to show that there were any persons in existence with an outstanding interest in the premises in question or any part thereof" and consequently defendant could not successfully resist plaintiffs' action for specific performance, citing Borough of East Rutherford v. Sisselman, 26 N.J. Super. 133 (Ch. Div. 1953); that defendant had not shown the existence of any heirs of Hezekiah Smith and that it had failed in an additional burden of showing that any attack by such heirs if they existed would have a reasonable chance of success.
Plaintiffs further assert on this appeal that the premises described in plaintiffs' contract of sale are identifiable with reasonable certainty from the deed description itself; that, even if defendant had offered proof to show that plaintiffs' title was not perfect upon the record there was "clear and *217 uncontradicted evidence of possession for a period of upwards of 53 years," and that "all the proofs necessary for the protection of defendant are available to it" and would be available to it in the future and thus meet the requirement of availability expressed in the case of Potter v. Lumsden, 93 N.J. Eq. 476 (E. & A. 1922).
The courts have employed various expressions to indicate the standard which should be applied in determining whether in a particular action for specific performance a defendant's challenge of a plaintiff's title is sufficiently serious and basic to enable such defendant to resist successfully an action to compel him to accept the conveyance. A review of some of the leading authorities is necessary.
The case of Casriel v. King, supra, was an action for specific performance. The contract stated that the conveyance was "subject to covenants, conditions and restrictions of record, which have not been violated." It stated also that the contract would be null and void unless seller's liquor license could be transferred. Prior to action on the transfer by the municipality the defendant vendee demanded the return of his deposit. There existed a covenant against the sale of liquor which had been violated over a long period.
Defendant maintained that the quoted phrase constituted a representation that no covenants had been violated. Plaintiff alleged that it should be read as meaning "subject to covenants * * * which have not already been violated." Specific performance was granted by the trial court. It held that "it is the uniform rule in this State to decline to decree specific performance where reasonable doubt concerning the title exists, though rested on grounds merely debatable, but which might visit upon the purchaser litigation in that regard, and that too, where at law, the title might in fact be declared good." It added (141 N.J. Eq., at pages 533, 534):
"Of course, some ill-advised person might attempt to do so, but `when the authorities speak of the "hazard of litigation" to which the purchaser must not be subjected * * * they must refer to a hazard which is to be determined by the chance of successful *218 attack as viewed by the court in the suit for specific performance.' Per Stevenson, V.C., in Barger v. Gery, supra. (Italics mine.) And as Backes, V.C., aptly said in Salter v. Beatty, 101 N.J. Eq. 86, `The remote possibility of an idle and vain suit is not within the category of being "exposed to the hazard of litigation" * * *.'
The doubt affecting a title which may constitute a defense in a suit for specific performance must be reasonable and the feared contingency (here a suit for injunction) must be fairly probable. Also, it must appear that the anticipated attack on the title will have some reasonable chance of success. Certainly it can not be said that there is any reasonable chance of a successful attack on the title here involved based upon the violation of this covenant. I have no hesitation in saying that if such a bill came before this court, it is morally certain that the same would be dismissed, for the evidence to show an estoppel of other lot owners is contained in the official records of the City, and the proof of abandonment will undoubtedly multiply with the years and will be as available in the future as it is now.

* * * * * * * *
I have not overlooked the fact that whatever decree is entered in this cause will be in personam and not in rem, and, therefore, not binding on persons not parties to this suit, but the possibility that any person not such a party will attempt to enforce this restrictive covenant against the property the subject of this suit is so remote that the unbinding character of the decree seems to me to be of no moment here."
On appeal the present Supreme Court held that the trial court was correct in its construction of the provision in the deed. There was no reference in the appellate tribunal's opinion to the issues of marketability or to the standard to be employed in compelling a purchaser to take a title against his will in a case of this type.
The case of Day v. Kingsland, supra, was a suit for specific performance. Complainant derived his title through a prior partition proceeding in which only one heir was made a defendant. The remaining heirs were omitted as they had long since left the area and were presumed dead. A decree of sale was entered in the partition action and a sale made thereunder to one Baldwin, under whom complainant claimed by divers mesne conveyances. The buyer claimed that the title was not marketable due to failure to join all of the heirs in the partition action. The court granted specific performance. It held that when the alleged defect is one *219 of fact "the court will never compel a purchaser to take a title where the point on which it depends is too doubtful to be settled without litigation, or where the purchase would expose him to the hazard of such proceedings." The court held that where the record title is good then the burden is upon the purchaser to show such facts as would make a prudent man hesitate to accept the title.
In the case of Van Riper v. Wickersham, 77 N.J. Eq. 232 (E. & A. 1910), complainant sought specific performance. Defendant alleged an outstanding interest. A prior owner by will had directed that his cottage be sold if no children wanted to live therein. The trustees under the will obtained permission to sell but a person with a possible interest was not joined. The court granted specific performance, but conditioned on complainant's procurement of release of alleged outstanding interest within 30 days. The trial court said that courts "will not compel a purchaser to take a title of which there is a reasonable doubt."
In Smith v. Reidy, 92 N.J. Eq. 586 (Ch. 1921), the seller agreed to convey certain property free from all encumbrances. The buyer refused tender because certain restrictions binding a prior owner might affect this property. The court expressed the view that the restrictions did not apply but held that the title must be clear beyond a reasonable doubt. The court stated that the test is whether a reasonable man advised by ordinarily competent counsel might bring suit in the expectation that a successful outcome was not beyond the bounds of reasonable possibility. Specific performance was denied.
We note that in Sharpe v. Stretch, 98 N.J. Eq. 225 (Ch. 1925), the buyer signed a contract which contained certain restrictions. He then learned that there were more burdensome restrictions in the chain of title. Specific performance was denied. The court held that an acceptance of the title would subject defendant to litigation if he violated the restrictions.
The opinion of the court in Bank of Montclair v. Mallas, 120 N.J. Eq. 611, 614 (Ch. 1936), affirmed 121 N.J. Eq. *220 266 (E. & A. 1937), sets forth that the evidence established that a testator left his mortgaged property to his wife for life in trust, remainder to certain beneficiaries. The mortgage was foreclosed but the beneficiaries were not made parties to the foreclosure. Complainant purchased the property at foreclosure sale and entered into a contract of sale with defendant, who refused to consummate it and suit followed. Specific performance was refused. The court said "specific performance will be denied and decree refused if the title of the vendor cannot with certainty be pronounced free from doubt."
Specific performance was refused in Kohlrepp v. Ram, 79 N.J. Eq. 386 (Ch. 1911), because there existed a question with reference to the validity of an execution and whether the seller had perfected his title by 31 years of adverse possession. The court said: "this court should not force a title upon the defendant where there exists a legitimate question or doubt, either of law or of fact, affecting the title."
In Barger v. Gery, supra, 64 N.J. Eq. 263, 270, the holder of a mortgage had assigned it to one Anderson. The holder later assigned same to another and the mortgage was eventually foreclosed. The court granted specific performance. Anderson was aware of the foreclosure and never made any attempt to assert his claim. The court held that a title is marketable when: "(1) the fact is so conclusively proved in the suit for specific performance that a verdict against the existence of the fact would not be allowed to stand in a court of law, and (2) where there is no reasonable ground for apprehending that the same fact cannot be, in like manner, proved, if necessary, at any time thereafter for the protection of the purchaser."
The case of Sulk v. Tumulty, 77 N.J. Eq. 97, 98 (Ch. 1910), was an action for specific performance. A building in question encroached upon lands of a neighbor. The seller sought by adverse possession to establish ownership of the land on which the building in part was located. Specific performance was denied. The vice-chancellor, holding *221 that adverse possession had not been established, stated: "Where the validity or marketability of a title depends upon facts outside of public records, the court should not force the title upon a defendant, unless the necessary proofs are available to him when he may have future need of them."
In Hoffman v. Perkins, supra, it appeared that a tender of a deed was refused because the buyer alleged among other reasons that certain restrictive covenants in prior deeds prohibited the construction of an apartment house. The court expressed the view that most of the objections to the title were without any merit and that it was apparent that the defendants were seeking an excuse and not a reason for non-performance. With reference to the restrictions the court said (3 N.J. Super., at page 488):
"Therefore, it is necessary to here determine, not whether a suit could be filed to restrain the construction of an apartment house, which suit might eventually be classed as a vain or idle suit, but rather whether such a suit could be pursued to a successful conclusion."
The court determined that the evidence incontrovertibly established that the restrictive covenants had been abandoned and decreed specific performance.
In Dobbs v. Norcross, 24 N.J. Eq. 327, 330, 331 (Ch. 1874), the court said:
"* * * The court will never compel a purchaser to take a title where the point on which it depends is too doubtful to be settled without litigation, or where the purchase would expose him to the hazard of such proceedings; or, as it is usually expressed, it will not compel him to buy a law suit. That may be a good title at law, which a court of equity in the exercise of its discretionary power, will not force on an unwilling purchaser. Every purchaser of land has a right to demand a title which shall put him in all reasonable security, and which shall protect him from anxiety, lest annoying, if not successful suits be brought against him, and probably take from him or his representatives, land upon which money was invested. He should have a title which shall enable him not only to hold his land, but to hold it in peace; and if he wishes to sell it, to be reasonably sure that no flaw or doubt will come up to disturb its marketable value. 2 Parsons on Contracts 564."
*222 The above case was cited with approval in Caparell v. Goodbody, 132 N.J. Eq. 559, 577 (Ch. 1942).
In Breitman v. Jaehnal, 99 N.J. Eq. 243, 248 (Ch. 1926), affirmed 100 N.J. Eq. 559 (E. & A. 1927), the court declined to direct specific performance and said:
"It has been uniformly held in this state that a court will never compel a purchaser to take a title unless it be one which puts the purchaser in all reasonable security that no flaw or doubt will come up to disturb its marketable title, provided that the doubt be real and not fanciful. * * * There is here presented, at least, `a doubtful question of law or fact affecting the title of the vendor,' and it seems to me all too plain that, if the defendants were obliged to accept the title to these premises, under the circumstances, they would very likely be purchasing a law suit, and it is not necessary for me to forecast the results of that law suit in order to dispose of the question of specific performance here."
In Hardy v. Johnson, 12 N.J. Super. 268, 272 (Ch. Div. 1951), the court said:
"A title is not marketable where there is a serious and substantial doubt concerning either the facts or the law upon which title is founded. * * * Courts of equity have at times declined to compel a purchaser to accept title which, though questionable, the court believed to be good, on the ground that its conclusion would not be binding upon persons who are not parties to the immediate action." (Emphasis supplied)
See also Gosman v. Pfistner, 80 N.J. Eq. 432 (Ch. 1912); Montrose Realty & Improvement Co. v. Zimmerman, 73 A. 846, 847 (N.J. Ch. 1909) (not officially reported).
In Tillotson v. Gesner, 33 N.J. Eq. 313, 326 (E. & A. 1880), the court said:
"* * * The true rule is stated in 3 Pars. on Con. (6th ed.) * 380, that if the character of the title be doubtful, although the court were able to come to the conclusion that, on the whole, a title could be made that would not probably be overthrown, this would not be good title enough; for the court have no right to say that their conclusion, or their opinion, would bind the whole world, and prevent an assault on the title. The purchaser should have a title which shall enable him not only to hold his land, but to hold it in peace; and if he wishes to sell it, to be reasonably sure *223 that no flaw or doubt will come up to disturb its marketable value. The court cannot satisfactorily or conclusively settle a title in the absence of parties who are not before them in the suit to assert their estate or interest in the lands."
Although, as has been seen, the courts have used various expressions to state their conclusions, they all result in the enunciation of substantially the same basic principles. They hold that a defendant will not be compelled to take a conveyance if it be reasonably probable that he will be exposed to litigation thereafter, or if it seems reasonable to believe that subsequently he will be obliged to institute an affirmative action to quiet the title or otherwise. Not every possible litigation to which such a defendant might be subjected is deemed a "hazard" sufficient to deny a plaintiff the relief he seeks. Such prospective action must have some substance. A challenge by a prospective grantee based on "remote, hypothetical or unfounded doubts concerning the title" is not such a claim against marketability as can be recognized. Hoffman v. Perkins, supra. No such situation is here present.
In direct contrast to the incontrovertible evidence disclosed in the Hoffman case were the facts existing in the case of Burke v. Dorfan, 101 N.J. Eq. 84, 85 (Ch. 1927), in which Vice Chancellor Backes found that there was doubt as to the claimed nonenforceability of certain restrictive covenants and doubts existed as to whether they had been waived or abandoned because of the toleration of a few isolated violations of them. He there stated:
"* * * Now, all that the vendor asserts may eventually materialize, but the title cannot be vindicated of the aspersions in this suit; that can be done only in a suit against the other lot owners, or in one by them for an invasion of the covenant, and the vendee is not to be called upon to offer himself as a victim of litigation by compelling him to make the purchase, or a sacrifice, if later judicial view shall not accord with the vendor's contention. It is the vendor's duty to sweep the house. Where the question of the marketability of a title, sought to be imposed upon a vendee, is reasonably debatable, in a court of justice, in point of law or fact, specific performance will be denied. Smith v. Reidy, 92 N.J. Eq. 586." (Emphasis supplied)
*224 If the challenge to the title be based on the contention that certain parties were not named in a partition or a foreclosure action, through which title is claimed, the title being sufficient on the record, the defense of unmarketability is deemed an affirmative defense the burden of proving which is on the defendant, e.g., Day v. Kingsland, supra. Such is not the case at bar. The same conclusion was reached in a case in which a plaintiff in a specific performance action traced his title through an in rem tax foreclosure proceeding. See Sisselman case, supra.
In the present case no judgment of record appearing in the title is challenged. No claim of the absence of parties defendant in proceedings of record is asserted. We are here considering an admittedly defective description. As the description can be plotted in two different ways, each of which closes and results in plotted tracts which on comparison show a variance of 25 acres, should defendant be obliged to take title? Should it be held that the heirs of Hezekiah Smith, if named in an appropriate action, might not assert a claim to the 25 acres in question? The answer is in the negative. It is to be noted also that, outside of the record, present proof of possession in plaintiffs and their predecessors in title might not be available to defendant if it be compelled to take title and the title be challenged at a future date.
As stated by the trial court, a complaint to quiet the title with the proper parties before the court would be the vehicle to resolve the debatable question presented. In the case of Charette v. Fruchtman, 110 N.J. Eq. 256 (Ch. 1932), the court in an action to quiet title considered the effect of a misdescription reflected in several deeds over a period of years. See also Deseumeur v. Rondel, 76 N.J. Eq. 394 (Ch. 1909); Webster Art & Strength Building & Loan Ass'n. v. Armondo, 128 N.J. Eq. 219, 220 (Ch. 1940).
Applying the law to the evidence before it the trial court was correct in denying specific performance and entering judgment on defendant's counterclaim.
Affirmed.