NATHANIEL E. SMITH et al.

*v.*

MARY A. REIDY.

[Decided May 9th, 1921.]

In a suit for specific performance of a contract of sale, where the issue is as to whether or not the lands are subject to certain restrictive building covenants, depending upon the ascertainment of the true construction and legal operation of an ill-expressed and inartificial instrument, specific performance will not be decreed against vendee unless the court be satisfied beyond all reasonable doubt that the lands are free from the alleged encumbrance.

On bill, &c.　On final hearing.

*Mr. Samuel Koestler,* for the complainants.

*Mr. John J. Stamler,* for the defendant.

BUCHANAN, V. C.

Complainants, as vendors, file their bill for specific performance of a contract of sale to defendant of a certain lot located at or near Elizabeth, New Jersey. The contract was duly acknowledged by the complainant wife, as required by the statute. Deed has been tendered and refused.

The written agreement provided that complainants should convey free of all encumbrances. The complainant husband acquired title to the lot in question (which is part of a large real estate development tract) from the El Mora Land Company by bargain and sale deed without covenants or recital of any encumbrances. The El Mora Land Company was the grantee of the entire tract from one Doolittle, to whom it had been conveyed by the Old Colony Land Company.

In the deed from the Old Colony Land Company Doolittle bound himself, and his successors in title, to his grantor, and its

successors in title, by certain restrictive covenants. This deed was duly recorded, and the covenants are therefore, to the extent of whatever force and effect they may have, binding upon complainant and constitute encumbrances, at least *prima facie,* upon the title which complainants offer to defendant. For this reason defendant refused to accept the deed and pay the purchase-money, and now contends that decree of specific performance should not be made against her.

The deed to Doolittle refers to a map of the tract laid out in blocks and lots, numbered, and specifically describes the premises thereby conveyed as

"Lots numbers 1 to 12, both inclusive, in block number 30;

"Lots numbers 1 to 30, both inclusive, in block number 36;

\*      \*      \*      \*      \*      \*      \*      \*      \*      \*

"Lots numbers 1 to 22, both inclusive, in block number 49;

"Also a gore of land of triangular shape formed by the intersection of Colonia road, Westfield avenue and Princeton road, said gore being opposite block number 36."

It is this last-mentioned "triangular gore" which is the lot comprised in the contract now before the court.

The covenants in question provide that neither Doolittle nor his successors in title shall cause or suffer the erection on any part of the said premises of any building except a dwelling-house (and stable or garage) of a certain specified size and cost; that the front line of the house shall not be within thirty feet of the front line of the lot, and the foundations of the stable or garage not within one hundred feet of the front line of the lot; the shortest street line of a lot abutting more than one street was to be deemed the front line of such lot. The covenants conclude with a specific provision that "the restrictions herein shall not apply to lots which are not at least one hundred feet deep and fifty feet wide," except that on none of such lots shall any nuisance be carried on, nor any manufacture or sale of liquor.

The defendant has not objected to the restrictions against nuisances, or the manufacture or sale of liquor, and by her answer consents to accept title subject to those restrictions, her objection to the title being to the building restrictions.

It seems very doubtful that any of the restrictions were intended to apply to the triangular gore—for one reason, because the restrictive covenants specifically refer to "lots" and "blocks" and "lots numbered so and so" in "blocks numbered so and so," all as shown on the map—whereas the triangle is not numbered on the map either as a block or a lot, and is not referred to in the deed as a lot or block, but separately and expressly as "also a gore of land of triangular shape," &c. In addition, this triangle was, at the date of the deed to Doolittle, in actual use by the Old Colony Land Company for business purposes, namely, the purposes of its real estate business, and had on it a building which did not at all conform to the restrictions, either as to character or location; and this office building was continued in the same way by the new El Mora Land Company from that time (1905) down to a year or two ago, when it was accidentally destroyed by fire.

Furthermore, as to the building restrictions (which are the only ones which need be considered in this case), the deed expressly says that they shall not apply to any lots which are not at least one hundred feet deep and fifty feet wide. The triangular gore is fifty-six feet wide at the base and approximately two hundred and fifty feet deep from the base to the point of the triangle—so that, in one sense, it might be called a lot at least one hundred feet deep and fifty feet wide—but it certainly does not come within the description of a lot one hundred feet deep and fifty feet wide, as it would be understood by the ordinary man. Such a lot would naturally and commonly be understood to be a lot fifty feet wide throughout an entire depth of one hundred feet. The triangle in question does not comprise or contain any such rectangle of fifty by one hundred. Its width, at a distance of one hundred feet back from the front line, is only about thirty-five feet.

I think there can be no doubt, therefore, that if defendant had taken title, and the present suit had been brought by a neighbor seeking an injunction against the breach of these covenants, such relief would be denied. It is thoroughly well settled that "courts of equity do not aid one man to restrict another in the use to which he may put his land, unless the right to such aid is clear;"

and that where there is any doubt, from the language of the cove-
nants, or from any other reason, whether the restrictions con-
tended for actually apply to the lands in question, equitable re-
lief will be denied. *Fortesque* v. *Carroll, 76 N. J. Eq. 583; How-
land* v. *Andrus, 81 N. J. Eq. 175; Underwood* v. *Herman, 82 N.
J. Eq. 353.*

It does not necessarily follow, however, that because equitable
relief would be denied in the enforcement of a doubtful cove-
nant, a vendee who has contracted for a title without encum-
brances will be compelled to accept a title where doubt exists
as to whether or not it is subject to restrictive covenants. In the
ordinary case a vendor must tender a marketable title; and a title
that is defective or doubtful is not a marketable title and equity
will not compel the acceptance thereof by the vendee. On the
same principle, it is obvious that where a vendee contracts for an
unencumbered title, and there is doubt as to whether the title is
encumbered by a restrictive covenant, equity will not compel the
acceptance thereof. On the other hand, the doubt must be a real
and rational doubt, not merely colorable or fanciful. There
must be at least a debatable question. *Zelman* v. *Kaufherr, 76
N. J. Eq. 52,* and cases cited.

In *Van Riper* v. *Wickersham, 77 N. J. Eq. 232* (at *p. 233*),
the court of errors and appeals of this state quotes *Pom. Spec.
Per. § 198:*

"In suits by a vendor the purchaser will not be forced to complete the
contract unless the title is free from reasonable doubt. * * * If, how-
ever, there arises a reasonable doubt concerning the title, the court, with-
out deciding the question, regards its existence as a sufficient reason for
not compelling the purchaser to carry out the agreement."

And goes on to say:

"So, it is the uniform rule in this state to decline to decree specific
performance where such doubt exists, though rested on grounds merely
debatable, but which might visit upon the purchaser litigation in that
regard, and that, too, where at law the title might in fact be declared
good."

In *Doutney* v. *Lambie, 78 N. J. Eq. 277,* the same court quotes
*Fry Spec. Per. § 253 et seq.:*

"The vendor must prove that his title is good beyond a reasonable doubt and will not expose the defendant to litigation."

And also quotes from its own prior opinion in *Tillotson* v. *Gesner, 33 N. J. Eq. 313:*

"The purchaser should have a title which shall enable him not only to hold his land but to hold it in peace; and if he wishes to sell it, be reasonably sure that no flaw or doubt will come up to disturb its marketable value. The court cannot satisfactorily or conclusively settle a title in the absence of parties who are not before them in the suit to assert their estate or interest in the lands."

Applying these principles to the case at bar, can it be said, under the circumstances shown, that the freedom of vendor's title from these building restrictions is evident beyond a reasonable doubt; that the true construction and legal effect of the covenants in the deed are not even debatable questions; and that defendant, taking title and acting on the belief that the lot is not subject to the restrictive covenants, will not be exposed to litigation?

In the present case the questions affecting the title are purely questions of law. It is contended by complainant, therefore, that they can be settled and determined by this court in this suit; that such determination must needs be to the effect that the lot is not subject to the building restrictions; and that therefore specific performance should be decreed.

I take it, there is no distinction in principle between a case where the doubt or alleged doubt in regard to the title rests on matters of fact and a case where it rests on matters of law. The question to be determined is, Is there a reasonable doubt? Is there a debatable question? Is there any reasonable likelihood of defendant having to litigate after taking title?

Whether this court can in this suit, therefore, settle the question of law constituting the alleged doubt as to the title, depends upon whether, in determining that question of law, it can say that the determination is such a necessary result from principles of law so well established, that there can be no reasonable doubt but that any and every court would reach the same result.

Vice-Chancellor Emery set forth in his opinion in *Lippincott*

v. *Wikoff, 54 N. J. Eq. 107* (at *pp. 114 et seq.*), the results of a very careful and thorough investigation of the law on this subject, including the English cases, to which exposition reference may here be made *in toto* rather than unnecessarily to lengthen these conclusions by the addition of excerpts therefrom. It may be noted, however, that if, indeed, in England the field of cases wherein equity will determine the questions of law giving rise to the alleged doubt has been broadened by reason of the decision in *Alexander* v. *Mills, L. R. 6 Ch. App. 124*, that result seems not to be followed in this state, in view of the language in the cases of *Van Riper* v. *Wickersham, supra*, and *Doutney* v. *Lambie, supra;* and, furthermore, the present case, involving the ascertainment of "the true construction and legal operation of some ill-expressed and inartificial instrument" comes within the exception of the language in *Alexander* v. *Mills*. See also *Wilson* v. *Vogel, 87 N. J. Eq. 584* (at *p. 585*).

In *Lippincott* v. *Wikoff*, the legal questions giving rise to the alleged doubt as to the title rested, first, on a general principle of law, which the court held to be so well and firmly established as not to be open to question, and second, on the construction of a statute, which the court held to be so clear in language and meaning as to preclude any argument. The present case is by no means analogous, although, on the other hand, the grounds for deeming the question of defective title to be rationally debatable are by no means as strong as in *Wilson* v. *Vogel, supra*. It lies between the two.

In my own opinion, the lot in question is not subject to the building restrictions, but I find myself unable to say that that proposition is not open to any rational debate—that it is a conclusion beyond any reasonable doubt. My own view rests upon my belief that a lot one hundred feet deep and fifty feet wide means a lot one hundred feet deep throughout its breadth and fifty feet wide throughout its depth; and also upon the legal principle that restrictions placed upon the use of lands conveyed in fee are always to be construed strictly, and ambiguities and uncertainties are to be resolved in favor of the owner's unrestricted use of the land. *Marsh* v. *Marsh, 90 N. J. Eq. 244; Underwood* v. *Herman, supra; Howland* v. *Andrus, supra;*

*Walker* v. *Renner,* *60 N. J. Eq. 493.* But, as against my views of the construction of the language of the covenant, it is certainly true that the triangular lot in question is literally over one hundred feet deep and over fifty feet wide, and I cannot say that another court or another judge might not be persuaded, by arguments developed by parties having an interest in maintaining the restrictions (no such parties being before me or involved in the present suit), to a conclusion at variance with mine. And, as to the legal principle—while it is absolutely well settled in equity suits, and while it would seem clear that, being a rule of construction, it would be equally applied at law as in equity, and while I know of no decisions or dicta to the contrary, yet, on the other hand, such search, as I have had opportunity to make, discloses no decision at law in this state where the rule has been laid down. Moreover, the language ("the above-described premises, or any part thereof") of the covenant imposing the restrictions is certainly broad enough to include the triangle, the language relied on to take the triangle out of the restrictions being in an exception to the general prohibition, and there is another well-known rule of construction which would require it to be made clear that a thing clearly within the general prohibition, but claimed to be excepted therefrom, does, in fact, come within the meaning of the exception clause.

Finally, I cannot say that defendant would not be exposed to litigation if she took title and then built upon the lot in contravention of the provisions of the restrictive covenants. It will be noticed that the language of the court of errors and appeals in the *Van Riper* and *Doutney Cases,* quoted earlier herein, is "exposed to litigation"—not "exposed to the hazards of litigation"—as is said in some of the cases. Of course, in one sense, each of us is always exposed to litigation; suit may be brought unjustifiably against any one, through ignorance or malice. What is meant, however, is, I take it, the possibility that a reasonable man advised by ordinarily competent counsel, might sue in respect of these covenants, in the expectation or belief that a successful outcome was not beyond the bounds of reasonable possibility. Tested by that standard, there would be no danger of suit in equity, as I have hereinbefore pointed out, but the same

cannot be said as to a suit at law for damages for breach of the covenant.

The case is very close to the line, indeed, but I do not feel that specific performance should be decreed and will advise a decree dismissing the bill.