In undertaking to require a vendee to perform his contract to purchase, the vendor must first cleanse his title to conform to the specifications of the agreement. Smith v. Reidy, 92 N.J. Eq. 586; 113 Atl. Rep. 774.
On December 1st, 1944, the complainant agreed for a substantial consideration to convey a parcel of land in the City of Trenton to the defendant by a deed of general warranty, free from all encumbrances. The complainant tendered to *Page 114 
the defendant a deed granting the premises subject to the restrictive covenants and conditional terms embodied in a prior deed in the chain of title.
The significance and materiality of those provisions are immediately discernible in the following quotations:
"And the said party of the second part in accepting this deed do covenant and agree with the said Rutherford Land Company, their successors and assigns, that the said party of the second part, his heirs and assigns, shall not sell or suffer to be sold on the said premises any spirits or other intoxicating drinks as a beverage and that if this condition be broken by the legal representatives, this conveyance shall become null and void and the title to the premises shall revert to the grantors, their successors and assigns.
"And the said Rutherford Land Company party aforesaid of the first part for themselves and their successors do hereby covenant, promise and grant to and with the said Augustus G. Richey, party of the second part, his heirs and assigns — that it shall and may be lawful for the said party of the second part, his heirs and assigns, at all times forever hereafter peaceably and quietly to have, hold, use, occupy, possess and enjoy all and singular the hereby granted premises, with the appurtenances and every part and parcel thereof, without the lawful let, suit, eviction, interruption or disturbance of the said party of the first part, their successors and assigns, or any other person or persons claiming by, from or under them or any of them, subject to said condition herein contained, and that the said premises are free and clear and freely and clearly acquitted and discharged of and from all former mortgages, judgments, executions and encumbrances whatever made, done, committed, or suffered by them or any of them."
The complainant purposes to grant the premises "subject to covenants restricting the use of said property, including the reverter of the property, contained in a deed from the Rutherford Land Company to Augustus G. Richey, dated July 17th, 1883, and recorded in Book 137 of Deeds for said County, pages 229, c." The language of the clauses is appropriate to create more than a restrictive covenant, but as well a condition with a forfeiture of the estate as the consequence of its non-fulfillment. Cf.Carpender v. New Brunswick, 135 N.J. Eq. 397; 39 Atl. Rep.
2d 40.
The complainant agreed to transmit to the defendant an unqualified and unencumbered title to the premises. The complainant does not pretend to do so. Solicitous to protect itself against any eventual accountability, the complainant *Page 115 
intends to deliver a qualified estate with a modified instead of a general warranty. Although promises are made by words, they must be fulfilled by acts.
It is elementary that a vendor who seeks the performance of a contract for the conveyance of land must make evident his readiness and willingness to perform his obligations under the terms of the contract. Meidling v. Trefz, 48 N.J. Eq. 638;23 Atl. Rep. 824. The willingness of the complainant to convey the premises to the defendant in fee-simple by deed of general warranty free of all encumbrances is inapparent.
The contract toward which such attitude must be shown is the contract made by the parties. Acquackanonk Building, c.,Passaic v. Parsonnet, 107 N.J. Eq. 48; 151 Atl. Rep. 865. The stipulation of facts reveals that although the complainant was aware of the condition contained in the deed of 1883 at the time of the execution of the contract of sale, the defendant was without knowledge of its existence. The condition has never been extinguished. The endeavor is to shift the insecurity of the title to the defendant for his future concern.
The circumstances already related constitute sufficient justification for the dismissal of the bill.
Advocates of a defeated cause often readjust their positions and renew the same old battle on another field, and so it is expedient to notice that the complainant's alleged cause of action is sought to be invigorated by the exigent insistence that the deed of 1883 did not effectually establish a condition subsequent in that the estates given in the granting clause and the habendum of that deed are so repugnant to each other that a reasonable reconciliation of them cannot be attained. Therefore, it is said the granting clause containing no condition whatever controls.
Although unessential to the decision of the present cause, I am disposed incidentally to acquaint counsel with my views. Obviously the later contention of the complainant is vain in the existing suit. The provisions which temper and qualify the estate originated in the deed of the Rutherford Land Company and the reversion, si contingat, runs to that grantor, its successors or assigns. The complainant is not a *Page 116 
successor in interest of the land company or an assignee of any reversion created by the former deed. Neither the land company nor any corporation or person in privity is a party here; hence the apprehended reversionary interest cannot be pacified in the present litigation.
Passing that obstruction, it is observed that the structure and composition of the deed of 1883 do not invite the application of the rule invoked by the complainant. A construction of that deed is not perplexing.
I am constrained to state that the rule declaring that anhabendum clause creating an estate contradictory or repugnant to that described in a conventional granting clause must be rejected, has lost much of its prestige and patronage in recent years. While it continues to be regarded, inter alia, as a rule of construction, it is not respected as a strict rule by which the transmission of estates in property must be governed.
In modern times, deeds are customarily prepared with the use of forms on which the stereotyped passages have been printed. The natural consequence is the common practice of inserting qualifications, reservations, and restrictions at some convenient and available open space on the stationery. Therefore, I do not hesitate to venture the opinion that the dialectic process that regarded the granting clause, the habendum and tenendum as entirely separate and independent portions of the same instrument, each possessing exclusively its special functions, is no longer pragmatical. See 26 Corp. Jur. 429-432 §§ 128, 129;16 Am. Jur. 570 § 237; Martindale on Conveyancing (2d ed.), §121; 1 Jones on Real Property, in Conveyancing, § 627. In branches of jurisprudence, experience has caused many technical rules to be supplanted by prescripts more realistic and practicable.
It is not of the nature of courts of equity to nourish the force of outworn formulas. The efficient and equitable process of inquiry to-day is to scrutinize the whole instrument in quest of the true intentions of the parties rather than to attribute predominant significance to some formal division of the document.
The prayer of the bill must be denied. Decree accordingly. *Page 117