# The Trustees of Centenary Methodist Episcopal Church

*v.*

## Cortlandt Parker.

Several persons banded together to build a Methodist church, and purchased land for that purpose, and, because they were unincorporated, they procured the land to be conveyed to A and B, two of their number, in fee, in trust for the society, "not yet fully organized," which was about to erect a house of worship upon the said land, to be conveyed by said trustees "unto the trustees of said religious society, as soon as the same are duly elected." Subsequently, under the act to incorporate trustees of religious societies (*Nix. Dig. 1861 p. 721*), five trustees were elected by the society, who duly adopted the name "The Trustees of the Centenary Methodist Episcopal Church." A and B conveyed to "The Centenary Methodist Episcopal Church, a corporation" &c., and covenanted to warrant the title to the land conveyed, to "The Trustees of the Centenary Methodist Episcopal Church, aforesaid corporation."—*Held*, (1) that a conveyance to such corporation was a valid execution of the trust to convey to the trustees when elected; (2) that the misnomer of the grantee did not vitiate the deed; and (3) that the title to the land was not, after the conveyance to the corporation, impressed with a trust for religious purposes.

On demurrer to bill for specific performance.

In the fall of 1866, a number of persons of the Methodist Episcopal religious belief banded together for the purpose of erecting a church in the city of Newark. They secured the land necessary for their purpose, and commenced to build. When it became advisable to take deeds for the land, the society or congregation was as yet unincorporated. It paid the consideration for conveyances of the land, and procured two deeds to be made, one from Henry G. Post and wife, dated August 25th, 1866, and the other from William Westfall and others, dated November 3d, 1866, to James G. Barnet and Enoch Bolles, Jr., two of the members of the society, in fee, in trust, in the language following:

Centenary Methodist Church v. Parker.

"To and for the use and behoof of a religious society and corporation connected with the Methodist Episcopal Church, which said religious society is not yet fully organized, but which is about to erect a house of worship upon said land and premises, and that the said Enoch Bolles, Jr. and James G. Barnet do, for themselves, their heirs and assigns, covenant and promise that they will execute a good and sufficient deed of conveyance of the above-described tract of land and premises unto the trustees of said religious society, as soon as the same are duly elected, or to such other person or persons as the said trustees may elect."

On the 16th day of October, 1867, the said society or congregation elected five trustees, and those trustees became duly incorporated under and by virtue of the provisions of the act entitled "An act to incorporate trustees of religious societies," approved April 17th, 1846 (*Nix. Dig. 1861 p. 721*), by the name "The Trustees of the Centenary Methodist Episcopal Church."

On the 31st of October, in the same year, Messrs. Bolles and Barnet, by their warranty deed, in which they style themselves "trustees," conveyed the land, which had, as aforesaid, been conveyed to them in trust, to the "The Centenary Methodist Episcopal Church," which, in the conveyance, is described as "a corporation duly organized under the laws of the state of New Jersey, of the city of Newark, in the county of Essex and state of New Jersey, of the second part."

In the covenant of warranty, which this deed contains, Bolles and Barnet agree to "warrant, secure and forever defend the said land and premises unto the said 'The Trustees of the Centenary Methodist Episcopal Church,' aforesaid corporation, duly organized under the laws of the state of New Jersey."

Since the completion of the edifice, on the land thus conveyed, the congregation, there accustomed to worship, has grown so large that a new church is needed for its accommodation, and for this reason, and because the business centre of Newark is now approaching the land, and dwellings are receding from it, it is deemed expedient to change the site of the church.

Actuated by these circumstances, the corporation has secured a new site for a church, and is engaged in building a new edifice upon it. To provide funds for this new undertaking, the site of the old church was exposed to public sale and sold to the

highest bidder, the defendant, Cortlandt Parker. A condition of the sale was, that a good title to the property should be given to the purchaser.

Mr. Parker objects to the title which a deed from the corporation will give him, first, because it is suggested that, by the deeds to Bolles and Barnet, a trust was impressed upon the land that it should be used forever for the erection thereon of a house of worship for the congregation or society referred to in the deeds, and the religious purposes of such society; second, because, if such a trust is not thus impressed upon the land, the terms of the trust created by the deeds required that the conveyance should be to the trustees of said society as individuals, by their several names, or to such persons as they should name, and not to them as a body corporate, unless such conveyance is preceded by their request for it; third, because the deed to " The Centenary Methodist Episcopal Church," did not convey the land to " The Trustees of the Centenary Methodist Episcopal Church," the corporation which now proposes to convey said land to him.

*Mr. Charles F. Hill,* for complainant.

*Mr. Cortlandt Parker, pro se.*

THE CHANCELLOR.

In construing the trust, in the light of these objections to the title, attention is arrested by the provisions that the trustees are to hold for the use of a society " not yet fully organized," and are to convey to the trustees " as soon as the same are duly elected."

An organization was evidently contemplated; to be accomplished by the *due election* of trustees, and the organization was to have the capacity, as a religious society, of holding real estate. The subsequent incorporation, under the act to incorporate trustees of religious societies, made an organization of the character thus contemplated. That act provides for the assembling of a religious society or congregation, and the election of persons, by a plurality of those present, " to be trustees of the same," and

declares that "said trustees," or their successors in office, are hereby constituted a body politic and corporate "in law, by whatever name they shall assume, agreeably to the directions of this act." The trustees, under their hands and seals, are to certify their name, and their certificate is to be recorded, "and thereupon the said trustees shall be known and distinguished in law by the name,"    *    *    *    "so taken."

The *due election,* creates a body corporate of the trustees chosen, and the statute authorizes these trustees to take a name by which *they* may be distinguished in law.

A conveyance in which the grantee is designated by the name thus taken by such trustees, is a conveyance to the trustees.

I know of no incorporating election of trustees of a religious society, to which the word "duly" can refer, but that which is provided for by this statute. And I think that sufficient appears, in the trust clauses in the deeds to Bolles and Barnet, to make it manifest that the scope and design of the trust to them, was to provide for the security of the title until, in pursuance of the law, the congregation could meet and make a corporation capable of taking and holding it.

The title to the land was not impressed with a trust for religious purposes. The design was simply to have it held in trust until an ascertained society, religious in character, should become a corporate entity, capable of taking it.

With the conveyance to the corporation, the purposes of the trust were accomplished and the trust terminated.

I have no difficulty with the third objection to the title. It abundantly and satisfactorily appears, upon the face of the deed, that the corporation intended as the grantee was the complainant in this suit. In the covenant of warranty, the corporate name is correctly given with apt words to identify it as the body corporate intended in the statement of the parties. The misnomer complained of will not vitiate the deed. *1 Devlin on Deeds* § *192; Den, Cairns* v. *Hay, 1 Zab. 174; Upper Alloways Creek* v. *String, 5 Hal. 323; Hoboken Building Association* v. *Martin, 2 Beas. 427.*

The demurrer will be overruled.