A stipulation approved by the solicitors is the source from which the facts in this cause are derived. On May 11th, 1859, a religious society adopting the name "The Rector, Wardens and Vestrymen of Trinity Church in Trenton" was duly incorporated. The society acquired by purchase three parcels of land known as lots 61, 98 and 128 situate on Academy Street, in the City of Trenton. The deed dated April 2d 1860, by which Samuel S. Stryker, et ux., and Thomas J. Stryker, et ux., conveyed the first parcel to the society contained the following provision:
"To be used by the said party of the second part and they hereby covenant with the said party of the first part to use the same exclusively for the erection and maintenance thereon of a church building for the celebration therein of the rites of christianity and that no part of said lands shall be used at any time for a burial of the dead therein."
The second parcel was conveyed by a deed delivered to the society in which the grantee therein is inaccurately named as "The Rector, Wardens and Vestrymen of Trinity Episcopal Church in Trenton." The society acquired an unqualified title to the third parcel in fee-simple. A church was erected on the parcel first obtained and at later dates a rectory, vestry chapel and sundry school buildings were constructed on the other properties.
On April 17th, 1931, the complainant assuming the corporate name "Trinity Cathedral in the Diocese of New Jersey" was organized and franchised as an incorporated society not for pecuniary profit and attached to its certificate of incorporation is a statement signed and acknowledged by the bishop and majority of the standing committee of the Diocese of New Jersey which embraces the following declaration:
"This corporation receives all the property both real and personal at present belonging to, and assumes all the obligations of the corporation known as `The Rector, Wardens and Vestrymen of Trinity Church *Page 263 
in Trenton' heretofore incorporated under the religious corporation act of the State of New Jersey on May 2d 1859 into which the corporation known as `The Rector, Wardens and Vestrymen of Trinity Church in Trenton' was heretofore merged, said merged corporation being now by this certificate reincorporated under an act of the Legislature of the State of New Jersey, entitled `An Act to incorporate associations not for pecuniary profit (Revision 1898)' being known as Trinity Cathedral in the Diocese of New Jersey."
In the year 1931 a cathedral was built at another location in the city and the buildings theretofore constructed on the premises here involved were demolished. On January 31st, 1945, the complainant, Trinity Cathedral in the Diocese of New Jersey, contracted to convey the three parcels of land to the defendant by deed of general warranty free from all encumbrances. The defendant declines to accept the deed tendered by the complainant; hence this suit to oblige him to specifically perform.
As might be supposed from the foregoing narrative, the objections leveled at the complainant's titles are: (1) That the quoted paragraph in the deed for the first parcel created a trust of a charitable nature, (2) the misnomer in the designation of the grantee in the conveyance of the second parcel and (3) the absence of a deed from the former society to the complainant having attached thereto the consent of the bishop and majority of the standing committee. R.S. 16:12-4; N.J.S.A. 16:12-4.
The two criticisms last stated are not impressive. The age of the conveyance, the lengthy period during which the society "The Rector, Wardens and Vestrymen of Trinity Church in Trenton" notoriously used and possessed the premises without question and the circumstance that it was an organization pursuing the episcopal form of government and discipline leave no plausible doubt concerning the identity of the intended grantee. Vide,Centenary Methodist Church v. Parker, 43 N.J. Eq. 307;12 Atl. Rep. 142.
The statute (R.S. 16:12-4; N.J.S.A. 16:12-4) contains the proviso:
"No sale, conveyance or mortgage of any real estate other than burial lots in churchyards or cemeteries * * * shall be made by *Page 264 
such corporations without the previous written consent of the bishop and a majority of the standing committee of the diocese within which the corporation is located * * *. Such consent shall be acknowledged or proved and recorded with the deed * * *. Without such consent the sale, conveyance * * * shall be void."
While the legislative policy to prohibit the alienations of such religious societies unless so sponsored and formalized is clearly perceptible and although I am aware of the decision of Vice-Chancellor Stevens in Lane v. Rector, c., CalvaryChurch of Summit, 59 N.J. Eq. 409; 45 Atl. Rep. 702, yet I am not at the moment persuaded that a proper construction of the statute makes the interdiction applicable to a transmission of title executed as here by a merger of the corporate societies with the sanction of the highest spiritual and temporal authority in the diocese. The titles to the properties were merely translocated by operation of the merger of the old and the new corporations. Consolidation of two or more parishes of that denomination may be accomplished with the consent of the bishop and majority of the standing committee of the diocese and the legislature has ordained that in such event "the consolidated parish shall immediately become vested with all the temporalities and real and personal property of the parishes so consolidated."R.S. 16:12-15; N.J.S.A. 16:12-15. Such displacements of title to property evidently are not inimical to the policy of the law or to the government of the church. If, notwithstanding my ultimate decision in the cause, it will be of assistance to the parties, I am disposed to hold that the third objection does not in my judgment cast any uncertainty upon the complainant's title or render it unmarketable.
The qualification the defendant indicates in the complainant's title to the first parcel is the restrictive clause embodied in the deed of April 2d 1860, and previously quoted. The apprehension is that the clause effectually originated a charitable trust imposing a limitation upon an absolute conveyance of the fee.
Such impediments in the progress of real estate titles are occasionally difficult to technically characterize. Whether the given clause is to be recognized as a covenant, a condition or *Page 265 
a declaration of trust requires an analysis of the entire clause from which the reasonably probable intention of the parties is to be ascertained. It is at once noticeable that the clause here under investigation does not contain the typical words introducing a condition nor the provisions of forfeiture and re-entry commonly employed in such cases.
Whether the clause should be classified merely as a covenant or regarded as indicative of an intention to declare a public trust or as a composite expression of both is manifestly debatable. The clause can be interpreted to mean that the premises were conveyed "to be used by the said party of the second part * * * for the erection and maintenance thereon of a church building for the celebration therein of the rites of christianity * * *" and that moreover "they [the grantees] hereby covenant with the said party of the first part to use the same exclusively" for that purpose. It is significant to note that the clause not only restrains the church officials but restricts the use of the premises. The phraseology itself illuminates the intent: "To be used by the said party of the second part and they hereby covenant * * *" (italics mine). I am inclined toward the conclusion that it was the intention of the grantors to convey and of the grantee to accept or acquire the first parcel for the stated use and purpose exclusively. Cf. MacKenzie v. Trustees of Presbytery of JerseyCity, 67 N.J. Eq. 652; 61 Atl. Rep. 1027. However, the clause whether regarded as a restrictive covenant or as exhibiting a declaration of trust for the specified use is known to the purchaser. If it is either, it is an obstacle. The complainants agreed to transmit an unencumbered and marketable title. A title that is doubtful is not a marketable title and equity will not compel a purchaser to accept it. Smith v. Reidy, 92 N.J. Eq. 586; 113 Atl. Rep. 774; Caparell v. Goodbody, 132 N.J. Eq. 559,577; 29 Atl. Rep. 2d 563.
If the parties are co-operative and mutually desirous of consummating the sale, it may be that there are factual circumstances undisclosed by the present stipulation which in an appropriate proceeding will liberate the title of the premises from the existing limitation. I refer counsel to R.S. *Page 266 15:14-7; N.J.S.A. 15:14-7; R.S. 15:14-9; N.J.S.A. 15:14-9; 2Restatement Trusts, § 381 (e) and incidentally also to such cases as Welitoff v. Kohl, 105 N.J. Eq. 181;147 Atl. Rep. 390 and Rector, c., of St. Stephen's P.E. Church v. Rector, c., of Church of the Transfiguration, 114 N.Y.S. 623; affirmed,123 N.Y.S. 1138; affirmed, 201 N.Y. 1; 94 N.E. Rep. 191.
The present bill will be dismissed without prejudice.