[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 476 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 477 
This is a suit for specific performance under an agreement for the sale of real estate, made between the plaintiff as vendor and the defendants as vendees. The agreement of sale provides in part as follows:
"2. Settlement is to take place at Chelsea Title and Guaranty Co., Atlantic City, N.J. on or before the 20th day of August, 1948, at 2 o'clock P.M., D.S.T. which time is of the essense of this agreement, when the Seller shall deliver a plain warranty deed for the said premises, and the balance of the purchase price is to be paid or secured as follows: Six thousand seven hundred and fifty Dollars ($6750.00) cash on day of settlement."
The agreement further provides as follows:
"4. The title to be delivered shall be a marketable title and shall be free and clear of all encumbrances including municipal liens and assessments and liability for assessments for improvements now constructed (except as herein stated), this clause to be operative as of the date of this agreement, and the title is to be subject to all existing restrictions of record, the seller, however, guarantees that there are no restrictions in any conveyance or plans of record affecting the said premises, which will prohibit the use and/or occupancy thereof as an apartment house building or for the construction of a three story apartment building containing more than 3 apartments, and the premises shall be conveyed in the same condition as the same now are, reasonable wear and tear excepted."
On August 5, 1948, the vendor signed the following letter which was prepared by Clarence Blitz, Esquire, counsel for Aaron Sherman:
 "Clarence Blitz, Law Offices, Atlantic City, N.J.
Schwehm Building August 5, 1948.
To Max Perkins, Vera Perkins, his wife and Aaron Sherman
This is to advise you that I agree as Seller of premises described in an agreement entered into between you and me on August 2, 1948, to postpone the date of settlement from August 20, 1948 at 2 o'clock p.m. D.S.T. to be had on or before November 15, 1948. This may be attached to and become a part of aforesaid agreement.
"Jacob Hoffman."
Thereafter, under date of September 22, 1948, Clarence Blitz, Esquire, counsel for Max Perkins and Vera Perkins, addressed and mailed the following letter to the plaintiff: *Page 479 
 Clarence Blitz, Law Offices, Atlantic City, N.J.
Schwehm Building September 22, 1948 Mr. Jacob Hoffman, 1503 Pacific Avenue Atlantic City, N.J.
Dear Sir:
Chelsea Title and Guaranty Co. has set aside November 15, 1948, at 2 p.m., at the Title Company, Boardwalk National Bank Building, Atlantic City, N.J., as the time and place for the settlement of the property on Providence Terrace, Atlantic City, N.J. under contract of sale by you to Max Perkins, Vera Perkins, and Aaron Sherman.
Kindly advise in the enclosed self-addressed envelope if the date is agreeable.
 Very truly yours, Clarence Blitz."
In response to this letter the plaintiff mailed the following letter to said Clarence Blitz:
"Hoffman Bros., Jewelers, 1503 Atlantic Avenue, Atlantic City, N.J. 9-27-48 C. Blitz 606 Schwehm Bldg., Local.
Dear Sir:
In reference to your letter of Sept. 22nd wish to state that Nov. 15th 1948 will be satisfactory for the settlement.
 Yours truly J. Hoffman."
On November 15, 1948, the several parties attended at the time and place set for settlement and final closing, but the defendants then refused to make settlement and now refuse to make settlement, advancing the following alleged reasons: (1) that there was a violation of paragraph 4 of the agreement above quoted, in that (a) a telephone pole was situate at the rear of the premises, (b) title was not marketable because there was no compliance with the statutory law when a predecessor in title to the plaintiff conveyed to the City of Atlantic City in lieu of foreclosure; (c) title was not marketable because one of plaintiff's predecessors in title received a conveyance from the City of Atlantic City without there being proper proof of compliance with the provisions of the statutory law; (d) fences did not conform with the lot line of the *Page 480 
lot; (e) plaintiff produced no proof at the time of settlement that certain judgments were not a lien on the property; (f) title was not marketable, since a conveyance from one of plaintiff's predecessors in title, i.e., Vermont State Realty Corporation, recited a nominal consideration; (g) title was not marketable, since there was no proof of record of the marital status of several of the plaintiff's predecessors in title; (h) the premises cannot be used for the construction of an apartment house because of restrictive deed covenants contained in prior deeds.
I find as a fact that on November 15, 1948, the parties to this litigation attended at the time and place set for settlement, but at that time Max Perkins was not prepared to advance his proportionate share of the purchase price. The plaintiff agreed to make some other and further arrangement concerning financing, or to extend the time of settlement so that the defendants might have a greater opportunity to raise the required funds. These negotiations finally broke down, since the defendants would not agree to an extension of time for the settlement or to a different method of financing, representing either the entire balance of the purchase price or the share which Max Perkins had agreed to advance, which would necessitate the execution of a bond and mortgage by Max and Vera Perkins. In this posture of the case, the defendants refused to make settlement and announced all or a part of the foregoing reasons which they have now advanced in their answer to this suit.
It becomes important in connection with at least some of the above advanced allegations of the defendants to ascertain whether time was made of the essence of the contract. If time of performance were not of the essence of the contract, the plaintiff is accorded an opportunity to clear such defects as might exist in the title by the time of the decree.
In Gerba v. Mitruske, 84 N.J. Eq. 141, 94 A. 34, the Court of Errors and Appeals said at p. 143:
"The prevailing rule, with relation to cases of this kind, is that where the time of performance is not of the essence of the contract the complainant is entitled to a decree, if a clear title can be given *Page 481 
by him at the time of the making thereof. Oakey v. Cook,41 N.J. Eq. 350, 364; Moore v. Galupo, 65 N.J. Eq. 194; Agensv. Koch, 74 N.J. Eq. 528. The rights of the parties in the present case must therefore depend upon whether time was of the essence of this particular contract. We think it was not. As a general rule, in equity, time is not deemed to be of the essence of the contract unless the parties have expressly so treated it, or it necessarily follows from the nature and circumstances of the contract; and, so, equity will enforce the specific performance of agreements after the time fixed for their performance has been suffered to pass by the party asking for the intervention of the court, unless the facts submitted show that the parties to the contract intended that time so fixed should be of its essence. Huffman v. Hummer, 17 N.J. Eq. 263; King v.Ruckman, 21 N.J. Eq. 599."
As a general rule, in equity, time is not deemed to be of the essence of a contract unless so made by express stipulation or unless the parties have so treated it that it necessarily follows from the nature and circumstances of the contract. Gerba v.Mitruska, supra; Grigg v. Landis, 21 N.J. Eq. 494. Otherwise stated, time may be made of the essence of a contract by the express stipulations of the parties, or it may arise by implication from the nature of the property, or the avowed objects of the seller or the purchaser. If we are to arrive at the conclusion that time was intended to be of the essence of the agreement it must be as a result of an implication consistent with the nature and circumstances of the transaction. Schwartzv. Hoffman Foundation, etc., Corp., 139 N.J. Eq. 349;51 A.2d 240.
In the agreement as originally prepared there appears a printed clause which provides, in part, as follows: "time is of the essence of this agreement,". Although this might be said to be a clear expression of the intent to make time of the essence of the agreement, yet such expressed provision may be subsequently waived by the parties either by an affirmative declaratory act to that effect or by their conduct.
It therefore becomes necessary to examine the conduct of the parties to ascertain their intent. It is to be noted that the letter of August 5, 1948, provides for settlement on November 15, 1948, instead of on August 20, 1948, as originally provided in the agreement. Said letter as well provides: *Page 482 
"This may be attached to and become a part of aforesaid agreement."
It is argued by the defendants that the quoted sentence denoted an intent on the part of the plaintiff and defendants to substitute the new date for that originally provided for in the agreement, and to continue the express provision that time of performance should be of the essence. However, their subsequent conduct casts a light upon their intentions, in view of which there may result an interpretation of the purpose of the continuance.
In Kerney v. Johnson, 104 N.J. Eq. 244, 144 A. 808, the Court of Errors and Appeals said at p. 246:
"It is true that the contract provides in a printed clause that time shall be of the essence of the contract; but, as the learned vice-chancellor very properly held, such a statement is not conclusive where it appears from the evidence and the conduct of the parties that they did not in fact so treat the contract, and did not in fact consider that time should be of the essence of the contract, but in reality waived by their own conduct that defense which they now urge as a barrier to recovery in the case. In such an eventuality, where the parties themselves have practically construed their own contract, such a clause does not control the situation, but the circumstances and the equities of the case as defined by the conduct of the parties present the best interpretation as to the meaning of such a clause; for concededly, under the settled construction of the law upon this subject, the acts of the parties in dealing with the subject-matter of their contract afford the best indication of their intention either to execute it or to annul it. Actaexteriora indicant interiora secreta. 8 Coke Rep. 291."
In Norton v. Miller, 138 N.J. Eq. 235, 47 A.2d 738; affirmed, 139 N.J. Eq. 310; 50 A.2d 895, the court said atp. 236:
"It is equally incontrovertible that such a provision declaring time to be of the essence is not in all circumstances conclusively operative. Its initial effectiveness may be subsequently waived and the intention to annul it may be disclosed by the conduct of the parties. Kerney v. Johnson,104 N.J. Eq. 244; 144 Atl. Rep. 808; Isbill v. Duffy,110 N.J. Eq. 429; 160 Atl. Rep. 326; Bommelyn v. Moss, 123 N.J. Eq. 236; 197 Atl. Rep. 6."
The letter of September 22, 1948, from Clarence Blitz, Esq., is not a demand that settlement be made on November *Page 483 
15, 1948, nor does it contain any advice that if settlement is not so made the contract will be considered a nullity. As a matter of fact, this letter contains the following phraseology: "Kindly advise in the enclosed self-addressed envelope if the date is agreeable." Quite patently, this sentence sought to elicit from the defendant a consent to hold the final settlement and closing on that date, with the resulting implication that if the date so set were not satisfactory another date could be set by mutual agreement. Such an expression on the part of the defendants is clearly not consistent with their presently advanced argument that the time of continuance was made the essence of the agreement. The letter of September 27, 1948, from the plaintiff is a substantiation of this conclusion.
In addition, it is to be noted that at least one of the defendants, i.e., Perkins, advised the plaintiff prior to November 15, 1948, that he was unable to raise his proportion of the requisite cash to purchase the property in question, and requested additional time after November 15, 1948, for the final closing. The plaintiff signified his willingness to grant a further extension. On the very day of settlement, November 15, 1948, there was again a discussion with the Perkins concerning the inability to then raise the entire amount of cash and a further proffered extension, or agreement to accept consideration for the conveyance other than that expressed in the agreement itself.
I am satisfied that the defendant Sherman was looking for an excuse not to complete settlement, for the reason that the defendant Perkins was unable to raise his cash, and seized upon the theory that time was of the essence, and that on November 15, 1948, they seized upon a multitude of alleged reasons why the plaintiff could not comply with the terms of the contract on that date, in order to excuse their own dereliction.
As will hereafter be demonstrated, a great part of the objections to the title so made are without any merit whatsoever. I am not satisfied that the defendants considered time of the essence of this agreement except as an after-thought to avoid the obligation incurred by them. *Page 484 
In Norton v. Miller, supra, the court said:
"Manifestations of good faith and good conscience have their appeal to a court of equity."
In The Caldwell B. L. Assn. v. Henry, 120 N.J. Eq. 425,185 A. 394, the court said as follows:
"It is quite evident that defendants were seeking a way out of their obligation; that they used the cesspool as an excuse and that they fixed the day for closing with the undisclosed purpose of refusing performance. Time did not become of the essence of the contract."
Not only does the letter of August 5, 1948, act as a waiver of the express provision that time was to be of the essence of the contract, but the letter of September 22, 1948, does not serve to make time of the essence of the contract. This latter letter fails in a number of particulars, and hardly succeeds in even serving, as stated in Stewart v. Griffith,30 Sup. Ct. Rep. 528, to "politely to apply a spur to the defendant to speed her in the performance of the contract."
In Schultz v. Pollock, 102 N.J. Eq. 157, 139 A. 902, the court said at p. 159:
"Neither does this letter, in my opinion, make time of the essence of the contract nor the two letters taken together. There is no fixed and definite time in either after which the defendants will consider the contract at an end. In Wyatt v.Bergen, 98 N.J. Eq. 502, a letter of defendants, called in the opinion Exhibit 7, and set out in full on page 505, couched in much stronger terms than the ones before us in this case, was held by Vice-Chancellor Griffin (at p. 506) not to make time of the essence of the contract. The learned vice-chancellor, speaking of other notices referred to in the same case, says again (at p. 505) that he thinks, `in the language of Mr. Justice Holmes, in Stewart v. Griffith,30 Sup. Ct. Rep. 528,' that they were `politely to apply a spur to the defendant to speed her in the performance of the contract.' This is an apt characterization, it seems to me, of the letters we are discussing. Again in Orange Society v. Konski, 94 N.J. Eq. 632, Vice-Chancellor Backes held that a letter much stronger than those in this case, quoted at length (at p. 634), was not final (at p. 635)."
In Rose v. Wisniewski, 112 N.J. Eq. 364, 164 A. 281, the Court of Errors and Appeals said at p. 366: *Page 485 
"The appellants contend that time was made of the essence of the contract by the complainants' notice, stating that on September 8th, 1931, they would appear at the office of the defendants' attorney, ready to carry out the terms of the contract, and that the complainants were unable to conform with the terms of the contract on that date, by reason of the structural tenement house violations which then existed. We do not think the complainants' notice made time of the essence, as there was nothing contained therein to that effect, or that it would be rescinded if not closed on the date mentioned, but simply stated that they were ready to deliver the deed pursuant to the terms thereof, on a certain fixed date; and it is a well-settled rule in equity, that time is not of the essence of a contract for the sale of lands, but may become of the essence either by being made so by the contract itself, or by expressnotice given, requiring the contract to be closed or rescinded ata stated time, * * *."
See, also, Isbill v. Duffy, 110 N.J. Eq. 429; 160 A. 326;Orange Society v. Konski, 94 N.J. Eq. 632; 121 A. 448.
Therefore, it is here found as a fact that time, although originally made an essential element of the contract, was waived by the parties to the agreement, this being evidenced both from their correspondence and from the course of their conduct; and that time, as an essential element, once having been waived, was not again made the essence of the contract between the parties.
As a result, since time is not of the essence of the contract, the plaintiff is entitled to a judgment if a clear title can be given at the time of the making thereof. The proofs submitted before me demonstrate that the objections above referred to as (a) and (d) are without merit, since both the telephone pole and the fences therein referred to had been removed prior to the day of trial. In so far as the objection above designated as (b) is concerned, there is no proof before me that the City of Atlantic City did not comply with R.S. 40:60-3 at the time it accepted a conveyance from the then fee title holder in lieu of foreclosure. It is to be noted in this connection that although the deed from Elizabeth Felker to the City of Atlantic City was dated May 29, 1942, it was not officially accepted and recorded by the City of Atlantic City until after June 4, 1942, this being the date upon which the municipality adopted a resolution authorizing the acceptance of the conveyance. Objection (c) above referred to is *Page 486 
as well a fanciful objection to the title. The defendants contend that the title is not marketable since R.S. 40:60-26 as amended was not complied with when the City of Atlantic City sold and conveyed the real estate here involved to the Vermont State Realty Corporation. The proof as elicited before me demonstrated, and I find as a fact, that the above referred to statute was strictly complied with. The objection of the defendants is founded upon an omission of the year in the affidavit of publication of the required notice as filed in the said clerk's office. This, in and of itself, does not serve to make the title unmarketable if the advertisement actually complied with the statutory requirements.
Objections (e) and (g) are as well without merit. These objections to the title find their foundation in a lack of proof at the time of settlement that certain judgments were not a lien on the property, and that there was no proof of record of the marital status of some of the plaintiff's predecessors in title. This sounds like a typical Title Company exception, and is without substance in so far as the title itself is concerned. It is demonstrated that the judgments were subsequently proven not to have affected the title. As a matter of fact, were there any merit to the latter of these two objections, it is doubtful whether any title in the State of New Jersey could now be considered marketable.
The important question is what the actual status of the title was at the date of final settlement, and not whether the grantee had any remote, hypothetical or unfounded doubts or fears concerning it. If the judgments referred to were not encumbrances upon the title, even though recovered against some one with a name similar to that of an antecedent owner, the marketability is unaffected.
The defendants do not contend, nor have they proved that the title is unmarketable because of the marital status of the prior grantors, or the judgments which were recovered against individuals with names somewhat similar to those of owners in the chain of title, but content themselves with the allegation that because there was no proof submitted to them on the date of settlement that the title was unaffected by these *Page 487 
circumstances that there was a failure to comply with the terms of the agreement. They seem to advance the theory that regardless of the actual status of the fee title on the date of settlement, they had some doubt as to whether the encumbrances affected the marketability and that the title was, therefore, not marketable.
Objection (f) is found to be without merit, since it attempts to cast a cloud upon the title merely because of the fact that the conveyance from the Vermont State Realty Corporation recited a nominal consideration.
The majority of the foregoing objections make it quite apparent that the defendants were seeking an excuse and not a reason for nonperformance, as was the case in Aron v. Rialto Realty Co.,100 N.J. Eq. 513, 136 A. 339. The sole excuse advanced for noncompliance with the agreement which might have any merit is that above designated (h) which, in effect, alleges that the premises cannot be used for the construction of an apartment house building containing more than three apartments, in view of the fact that there exist restrictions of record which prevent the use of the property for this purpose.
It is clear that the parties to the agreement must have had knowledge of the existence of such restrictions, since they expressly provided in their agreement that title was subject to all existing restrictions of record, but further provided, in effect, that these restrictions did not prevent the construction of an apartment house as above described.
It was admitted by counsel for both parties that the Ventnor Dredging Company, predecessor in title of the property here involved, which was as well the owner of the tract of land commencing midway between Boston and Providence Avenues and extending westerly to Albany Avenue, bounded on the south by Ventnor Avenue and on the north by the thorofare, restricted all of the said tract in furtherance of a neighborhood scheme and that the restrictions in each conveyance by the Ventnor Dredging Company contained the following phraseology: "No building erected or to be erected on said lot shall be used for any other purpose than a dwelling." *Page 488 
The objection now made by the defendants is that as a result of this restriction they will be unable to construct an apartment house on the lot in question and that they will be exposed to the hazards of litigation.
In order to reach a conclusion we must decide whether the restriction ever prevented the construction of an apartment house, and if so, whether this restriction was abandoned.
The strength and efficacy of the restriction must be tested in a manner common to the test employed where a restriction is alleged to violate a covenant as to marketability.
In Casriel v. King, 141 N.J. Eq. 515, 58 A.2d 269, the court said, at pp. 533 and 534:
"Of course, some ill-advised person might attempt to do so, but `when the authorities speak of the hazard of litigation to which the purchaser must not be subjected * * * they must refer to a hazard which is to be determined by the chance of successfulattack as viewed by the court in the suit for specific performance.' Per Stevenson, V.C., in Barger v. Gery, supra
(italics mine). And as Backes, V.C., aptly said in Salter v.Beatty, 101 N.J. Eq. 86, `The remote possibility of an idle and vain suit is not within the category of being "exposed to the hazard of litigation" * * *.'
"The doubt affecting a title which may constitute a defense in a suit for specific performance, must be reasonable and the feared contingency (here a suit for injunction) must be fairly probable. Also, it must appear that the anticipated attack on the title will have some reasonable chance of success. Certainly it cannot be said that there is any reasonable chance of a successful attack on the title here involved based upon the violation of this covenant. I have no hesitation in saying that if such a bill came before this court, it is normally certain that the same would be dismissed, for the evidence to show an estoppel of other lot owners is contained in the official records of the city, and the proof of abandonment will undoubtedly multiply with the years and will be as available in the future as it is now."
Therefore, it is necessary to here determine, not whether a suit could be filed to restrain the construction of an apartment house, which suit might eventually be classed as a vain or idle suit, but rather whether such a suit could be pursued to a successful conclusion. Under the circumstances, it is necessary to determine whether the doubt of the defendants' right to construct an apartment house is a rationable doubt, real and not fanciful. *Page 489 
See, also, Trinity Cathedral in the Diocese of N.J. v. Etz,137 N.J. Eq. 261, 44 A.2d 394; Barger v. Gery,64 N.J. Eq. 263, 53 A. 643; Smith v. Reidy, 92 N.J. Eq. 586, 113 A. 774; Van Riper v. Wickersham, 77 N.J. Eq. 232, 76 A. 1020.
It becomes necessary, therefore, to attempt to ascertain the intent in employing the exact phraseology which was used.
A case very similar to the matter now under consideration isUnderwood v. Herman Co., 82 N.J. Eq. 353, 89 A. 21, where the court said at p. 333:
"We find it unnecessary, for the disposition of this case, to say more than to reiterate the principle of equitable jurisprudence so frequently applied in cases of this nature, that unless the right to restrict is made manifest and clear in the covenant, a court of equity will not aid by its process of injunction one owner to restrict another in the otherwise lawful use to which he may put his land. Howland v. Andrus, 80 N.J.Eq. (10 Buch.) 276."
 * * * * * * * *
"We consider these principles applicable to the case at bar, and they become dispositive of the question involved. The grantors in their covenant made no attempt by language to define the meaning of a `dwelling-house and its appropriate buildings,' but allowed each grantee in the practical adoption of the land to his personal requirements, to construe the language of the covenant to meet the personal exigency.
"In this manner language of an uncertain and indefinite character received a practical interpretation upon the land by the grantees, presumably with the acquiescence of the grantors and prior grantees.
"This practical interpretation of the covenant which the learned vice-chancellor has found to exist, emphasizes the contention that the variations and departures from the strict terms of the covenant are due to its uncertainty and indefiniteness; factors which bring the case within the application of the doctrine of the cases to which we have referred, and which require the reversal of the decree appealed from."
As a result of the foregoing, where there has been a practical application and interpretation of the restriction which is indefinite and uncertain because of the language employed, the court will follow such practical application.
It is to be noted in the above case that the restriction was against erecting a building other than a "dwelling house and its appropriate buildings." The restriction sub judice provides *Page 490 
as follows: "No buildings erected or to be erected on said lot shall be used for any other purpose than a dwelling." There is a marked similarity between the two expressions.
In order to interpret the meaning of the restriction, the practical application thereof by the owners in the neighborhood affected should be studied.
By stipulation of counsel, the court visited the locality here in question. At the southwest corner of Providence and Ventnor Avenues there is a large five-story apartment building; proceeding northwardly, there are two private dwellings and then the lot now in question. On the northerly side of the lot here in question there is a three-story apartment building. On each of the following streets, in addition to the foregoing buildings, from Ventnor Avenue to the northerly side of Winchester Avenue, buildings are constructed or used for the following purposes, as appears from an examination of the exterior, as evinced by signs: On Providence Avenue, one apartment building and piano studio, sporting goods store, grocery store, cleaning establishment and express office. On Hartford Avenue, a large four-story Masonic Temple, a large Goodyear tire store and garage, seven apartment houses, four boarding and rooming houses. On St. Davids Place, five apartment houses; and on Albany Avenue, two service stations, eight apartment houses, one beauty salon, two radio stores, one candy and newspaper store, one barber shop, one vegetable store, one leather goods establishment, one bar and retail liquor store and one rooming house. Extending from Sovereign Avenue to Hartford Avenue, north of Winchester Avenue, is a garden apartment construction, known as Chelsea Village. The largest part of this apartment construction is within the restricted area. It consists of 261 individual apartment units.
A detailed examination of the locality might disclose and probably would disclose additional rooming houses and apartments, since the above information was gathered by exterior examination of the buildings. The apartments and apartment houses above referred to range from converted private dwellings with two apartments to the large apartment house *Page 491 
above described, consisting of five stories. It is evident, therefore, that the owners of properties similarly restricted to the property here involved have interpreted the restriction not to exclude the construction and use of a building for more than one family, and that apartment houses could be and therefore are properly constructed within this locality.
There may also as well be an abandonment of a restriction in a general and neighborhood scheme by acquiescence in a violation or change of the character of the neighborhood. When there is such acquiescence or change in the neighborhood and the scheme is totally or partially destroyed or impaired, the accompanying burden undergoes a corresponding modification. Sanford v. Keer,80 N.J. Eq. 240, 83 A. 225; Bowen v. Smith, 76 N.J. Eq. 456, 74 A. 675.
From the findings of fact above set forth, showing the use of the other plots within the restricted area, it becomes plain that if the covenant was ever considered to have prevented the construction of an apartment house, there has been such an acquiescence and use of premises for that purpose, or such a change in the neighborhood that the scheme has, to the extent, at least, of the erection of apartment houses in the restricted neighborhood, that such restrictive purpose has now been abandoned.
Judgment will be entered for the plaintiff. *Page 492